[Brown, Treasurer, v. Gay-Padgett Hdw. Co.]

# Brown, Treasurer, *v.* Gay-Padgett Hdw. Co.

### · *Summary Judgment.*

#### (Decided July 25, 1914.  66 South. 161.)

1. *Counties; Debts; Classification.*—The legitimate debts of counties may be divided into· two classes; those which are prescribed by law and purely involuntary as to the county, which are preferred claims against the general treasury, and which section 153, Code 1907, requires the treasurer to set aside sufficient funds to pay, and those which are authorized by law merely, and are assumed by the county with some measure of discretion at least as to time and amount, which the county cannot incur when it has reached its constitutional debt limit.

2. *Same; Current Obligations; Anticipated Revenue.*—Although a county has reached its constitutional debt limit, it is bound to pay its ordinary current obligations for governmental purposes, and for this purpose may anticipate revenues actually assessed and payable for the year in which the obligations were incurred.

3. *Same; Voluntary Obligation; Constitutional Debt Limit.*—Where a county has reached its constitutional debt limit, all further voluntary obligations assumed or incurred after the expenditure of the full amount of revenues on hand, or in legal expectancy, are debts within the constitutional prohibition and not enforceable.

4. *Same; Borrowing Money.*—Where a county has reached its constitutional debt limit, it cannot borrow money, even to provide funds for current and necessary municipal expenses.

APPEAL from Jackson Circuit Court.

Heard before Hon. W. W. HARALSON.

Motion by the Gay-Padgett Hardware Company for summary judgment against Dallas Brown, as county treasurer, for refusing to pay certain claims which had been allowed by the commissioners' court of Jackson county, and for which warrants had been drawn against the general or special funds of the county.  From a judgment granting the motion, the treasurer appealed. Affirmed.

See, also, 186 Ala. 561, 65 South. 333.

Motion was filed under section 5938, Code of 1907. The claims were as follows:  $36 for tools and road ma-

terial; $19 for work on the county bridge; $25 for a fee due the sheriff under sections 7383 to 7385, Code of 1907; $38 due for a filing case purchased for the use of the probate office; and $89 due the keeper of the poorhouse for a quarter's salary under a contract. The record shows that there were unappropriated funds in the treasury at the time of demand and at the date of the trial sufficient for the payment of these various items.

JOHN F. PROCTOR, for appellant. Under the following decisions it must be held that the claim here presented and sued on was not enforceable for the reason that the county had reached its constitutional debt limit.—§ 224, Const. 1901; *Gunter v. Hackworth*, 62 South. 103; *Commissioners v. Moore*, 53 Ala. 125; *Speed v. Cocke*, 57 Ala. 201.

BOULDIN & WIMBERLY, for appellee. There are two questions involved, first, whether Jackson county has reached its debt limit under the Constitution; and if so, are these demand debts within the meaning of the Constitutional limitation. This subject was somewhat considered in *Gunter v. Hackworth*, 63 South. 101. In this connection it is well to keep in view the provisions of Acts 1898-9, p. 43, which were in force at the time that section 224, Constitution 1901, became operative. Constitutions are made for practical purposes and should be reasonably construed.—*State, ex rel. v. Thompson*, 142 Ala. 98; *State v. McCarty*, 59 South. 546. A county must necessarily incur debts.—*Simpson v. Lauderdale County*, 6 Ala. 64. A county which has reached the debt limit may incur by contract or by operation of law any liability it could otherwise incur provided it has funds in the treasury to meet them as they accrue, or a sufficient sum to discharge such liabilities

is being raised by taxation during the current year. Such seems to be the generally accepted doctrine in other states; and surely is sound in principle.—McQuillon on Municipal Corporations, 2219 & notes; *City Council of Dawson v. Waterworks Co.,* 106 Ga. 713; *Butts v. Jackson Banking Co.,* 129 Ga. 801; *Tate v. City of Elberton,* 136 Ga. 301; *Addyston Pipe Works v. Curry,* 197 Pa. St. 41 (48); *South Bend v. Reynolds,* 155 Ind. 70; *Cedar Rapids v. Bechtel,* 110 Ia. 196; *Smith v. Dedham,* 144 Mass. 177; *Gubner v. McClellan,* 115 N. Y. 755; *Darling v. Taylor,* 7 N. D. 538; *Hull v. Ames,* 26 Wash. 272; Nate 37 L. R. A. (U. S.) 1080, et seq. If a county without power to incur debt purchases personal property on credit, the title does not pass and the seller may reclaim it. This question arises and has bearing on the claim for the book-case furnished the judge of probate's office.—Dillon on Municipal Corporations, Sec. 209, p. 409; *Municipal Securities Co. v. Baker Co.,* 39 Ore. 396; *Chapman v. Douglass,* 107 U. S. 348; *Manchester S. R. Co. v. Concord R. Co.,* 66 N. H. 100. Where money, services, or property is furnished to, appropriated and used by a county for its lawful and necessary purposes, but by reason of its want of power to incur debt, no indebtedness is or can be then created, yet, when the county has the funds in hand it becomes liable for money had and received, or upon a quantum meruit for work and labor done, or for the value of property appropriated to its use.—*Butts County v. Jackson Banking Co.,* 129 Ga. 801; *City Council of Dawson v. Waterworks Co.,* 106 Ga. 713; *Salt Lake City v. Hollister,* 118 U. S. 256; *Parkersburg v. Brown,* 106 U. S. 487; *Thomas v. Railroad Co.,* 101 U. S. 71; *Louisiana v. Wood,* 102 U. S. 284; *Chapman v. Douglass Co.,* 107 U. S. 348; Dillon on Municipal Corporation, Sec. 126; *Allen v. LaFayette,* 89 Ala. 641; *Mayor*

*v. Hollingsworth,* 170 Ala. 402-3-4; *Gen. Electric Co. v. Town of Ft. Deposit,* 174 Ala. 179.

SOMERVILLE, J.—In the case of *Gunter v. Hackworth,* 182 Ala. 205, 62 South. 101, we held that the indebtedness of Jackson county exceeds the limitation fixed by section 224 of the Constitution, and that the county could not incur any further indebtedness, even for the rebuilding of the county court house, which had been destroyed by fire. Speaking in general terms, it was there said, per SAYRE, J., that:

"The prohibition against indebtedness is generally construed to apply to indebtedness in all forms, however incurred, or for whatever purpose. Such has been the ruling of this court.—*Hagan v. Commissioners, etc.,* 160 Ala. 544, 49 South. 417, 37 L. R. A. (N. S.) 1027."

In *Hagan's Case, supra,* it was said, per DENSON, J., that: "The obvious intent of section 224 is to restrain counties from obtaining money either upon the general credit of the county, or by pledge or transfer of its revenue or assets, thereby creating a debt and imposing additional burdens upon the citizens, which, whether directly or indirectly, involve increased taxation."

The questions presented by this appeal require a more specific consideration of the terms "indebted" and "indebtedness" as used in section 224 of the Constitution.

It is clear that, if they are to be understood in their broadest signification, the effect of section 224 would be, not only to inhibit further indebtedness when the prescribed limit is reached, but also to practically forestall all municipal action; for certainly neither a county nor a city government could proceed for a single day in the exercise and discharge of its municipal powers and duties without incurring, for some period of time, debts, or liabilities. It becomes apparent at a glance that the

makers of the Constitution could not, in reason and common sense, have intended any such result.

Such limitations as ours are common throughout the United States, and the questions here under consideration have been often before the courts. In an elaborate review of the authorities, the learned editor of the Lawyers' Reports Annotated thus states the consensus of judicial opinion:

"The clear and unmistakable purpose of the framers of the organic law, in inserting this provision, was effectually to protect persons residing in municipalities from the abuse of their credit, and the consequent oppression of burdensome, if not ruinous, taxation. The mischief to be prevented was the creation of an excessive debt for local improvements or public works, or the loaning of municipal credit, so payable that the burden should not fall upon those who contracted the obligations, or on their revenues, but on posterity." Note to *Hagan v. Commissioners' Court*, 37 L. R. A. (N. S.) 1061.

In short, the indebtdenss intended is the obligation to pay more money than can be supplied by current funds, or by current revenues provided by lawful taxation for the fiscal year. And the requirement is that, whenever a county has reached the constitutional limitation, it must at once adopt the financial policy of *paying as it goes*.

The Supreme Court of Georgia has dealt very sensibly with the situation arising out of similar limitations in that state. Says the court, per EVANS, P. J.: "This differentiation between the debts which come within the operation of the constitutional provision and liabilities for legitimate current expenses to be paid out of the taxes, which can be properly levied during the year in which the liability was incurred is neither artificial

nor arbitrary. This constitutional provision must be construed in the light of the history of the law on the subject in this state, and the long-established affairs of a county. From the earliest times it has been the declared policy of this state that each year shall be a fiscal unit, and that current expenses should be met by a levy of taxes of the same year that the expenses were incurred. * * * In the meantime it is necessary that the governing officers of the county should discharge the duties imposed by law * * * and [provide] for other necessary current expenses of running the affiairs of the county. There was no authority of law for the county to borrow money with which to meet these expenses. The alternative, therefore, was presented that, as each year's expenses had to be paid out of the taxes of that year, the county must either incur a liability for these current expenses or there must be a complete cessation of public activities and governmental functions until the taxes were collected. There is no provision in the Constitution of 1877 designed to meet this contingency; and hence we may conclude that the inhibition against creating any new debt was never intended to prevent the county from contracting liabilities for current expenses in anticipation of its annual revenue, and which were to be paid from the revenue."—*Butts County v. Jackson Banking Co.*, 129 Ga. 801, 809, 60 S. E. 149, 152, 15 L. R. A. (N. S.) 567, 574, 121 Am. St. Rep. 244, 252.

To the same effect are the cases of *G. P. & R. Mfg. Co. v. Cleburne* (Tex. Civ. App.) 127 S. W. 1072; *Erie's Appeal*, 91 Pa. 398; *Reuting v. Titusville*, 175 Pa. 512, 34 Atl. 916; *Grant v. Davenport*, 36 Iowa, 396; *French v. Burlington*, 42 Iowa, 614; *People ex rel. Seeley v. May*, 9 Colo. 414, 15 Pac. 36; *State ex rel. Ash v. Parkinson*, 5 Nev. 415; *Valparaiso v. Gardner*, 97 Ind. 13,

49 Am. Rep. 416; *Alpena v. Kelley,* 97 Mich. 550, 56 N. W. 941; *Re State Warrants,* 6 S. D. 518, 62 N. W. 101, 55 Am. St. Rep. 852; *State v. Medbery,* 7 Ohio St. 529.: A very full collection and review of the cases on this subject will be found in the note to *Hagan v. Com'rs Court,* 37 L. R. A. (N. S.) 1058-1109. See, also, note to *Beard v. City of Hopkinsville* (Ky.) 44 Am. St. Rep. 229-243.

In *State v. Medbery,* 7 Ohio St. 529, the court says: "So long as this financial system is carried out in accordance with the requirements of the Constitution, unless there is a failure or defect of revenue, or the General Assembly have failed for some cause to provide revenue sufficient to meet the claims against the state, they do not and cannot accumulate into a debt. Under this system of prompt payment of expenses and claims as they accrue, there is, undoubtedly, after the accruing of the claim, and before its actual presentation and payment, a period of time intervening in which the claim exists unpaid; but to hold that for this reason a debt is created, would be the misapplication of the term 'debt,' and substituting for the fiscal period a point of time between the accruing of a claim and its payment, for the purpose of finding a debt; but, appropriations having been previously made and revenue provided for payment, as prescribed by the Constitution, such debts, if they may be so called, are, in fact, in respect of the fiscal year, provided for with a view to immediate adjustment and payment. Such financial transactions are not, therefore, to be deemed debts."

*In Re State Warrants,* 6 S. D. 518, 62 N. W. 101, 55 Am. St. Rep. 852, the court says: "Critically considered, it may constitute the incurring of an indebtedness; but it is not an indebtedness repugnant to the Constitution, because its payment is legally provided for by

funds constructively in the treasury. If the drawing of a warrant upon the state treasury is the incurring of an indebtedness by the state, then the drawing of such a warrant would violate the Constitution, even if there was money in the state treasury to pay it, if the constitutional limit of indebtedness had been reached; for there must always be some time intervening between the drawing of the warrant and its payment, and during such time the indebtedness of the state would be increased beyond the constitutional limit. Such an interpretation of the constitutional limitation would obviously be too hypercritical to be practicable or reasonable. It being once established, as we think it is by the authorities already cited, that the revenues of the state assessed and in process of collection may be considered as constructively in the treasury, they may be appropriated and treated as though actually and physically there; and an appropriation of them by the Legislature does not constitute the incurring of an indebtedness within the meaning of section 2, art. 13."

Legitimate county debts or obligations are of two classes: (1) Those which are prescribed and imposed by law, and are purely involuntary as to the county; (2) those which are merely authorized by law, and are assumed by the county with some measure of discretion, at least as to time and amount.

Section 153 of the Code makes a number of specified county obligations preferred claims against the general treasury, and requires the treasurer to set aside sufficient funds for their payment. We think also that, by necessary implication, whenever the assessed revenues of an overburdened county are not sufficient for the payment of all current county obligations, those involuntary obligations which are fixed and imposed by law must be regarded as preferred claims of a second class,

[Brown, Treasurer, v. Gay-Padgett Hdw. Co.]

which are entitled to precedence over the general and voluntary obligations of the county.

As a result of the foregoing considerations, we hold that a county which is indebted up to the constitutional limit may nevertheless appropriate its anticipated revenues actually assessed for the payment of its ordinary current obligations incurred during and for the year for which such revenues are assessed and payable; that the obligations absolutely fixed by law are preferred claims; and that all voluntary obligations assumed or incurred after the exhaustion of the full amount of revenues on hand or in valid expectancy are debts which are repugnant to the Constitution, and are therefore invalid as to their payment.

We think it is clear, also, that such a county cannot *borrow money* even to provide funds for current and necessary municipal expenses. The record does not inform us as to the current fiscal condition of Jackson county, but, in the absence of evidence to the contrary, we will presume that the claims here involved, being authorized by law, and having been duly presented to and allowed by the commissioners' court, are valid claims within the rules prescribed above.

It results that the trial court properly rendered judgment for the plaintiff as to each of the claims.

Affirmed.

ANDERSON, C. J., and MAYFIELD and GARDNER, JJ., concur.