(80 South. 828)

STATE ex rel. TERRELL–HEDGES CO. v. MOODY, Probate Judge. (8 Div. 131.)

(Supreme Court of Alabama. Feb. 6, 1919.)

Certiorari to Court of Appeals.

Petition by the Terrell-Hedges Company against A. H. Moody, Judge of Probate of Jackson County, for mandamus to issue warrants authorized by resolution of the county board. To review a judgment of the Court of Appeals (78 South. 639 [1]) reversing a judgment in favor of petitioner, petitioner brings certiorari. Application for certiorari denied.

M. M. Ullman and W. A. Jenkins, both of Birmingham, and Bouldin & Wimberly, of Scottsboro, for petitioner.

W. H. Norwood and John F. Proctor, both of Scottsboro, for appellee.

PER CURIAM. The majority of the court, consisting of ANDERSON, C. J., McCLELLAN, SOMERVILLE, GARDNER, and THOMAS, JJ., are of the opinion that the decision of the Court of Appeals was correct and should be affirmed. This results in a denial of the application for certiorari.

MAYFIELD, J. (dissenting). In the spring of 1917, petitioner entered into a contract with Jackson county to install in the county courthouse electrical light fixtures. Acting under this contract, the fixtures were promptly so installed. Later it was discovered that the county, in making the contract, had exceeded the debt limit fixed by the Constitution, in consequence of which the payment of the agreed price could not be paid because the contract to that extent was void.

To correct this error, and to prevent the necessity of having to remove the fixtures so installed, and to allow the county the use of them, and to prevent petitioner from losing his property and the cost of installing, the parties mutually agreed to rescind the former contract, and to enter into another, by which the county agreed to rent the fixtures from petitioner, for which the county agreed to pay $33.33 per month, and to appropriate that sum out of the current revenues for each fiscal year, beginning October 1, 1915. This was evidently intended to avoid violating the Constitution by exceeding the debt limit fixed thereby. The change was intended to conform to the decisions of this court construing this provision of the Constitution, and as to contracts of this identical county. See Brown v. Gay-Padgett Hardware Co., 188 Ala. 423, 66 South. 161. It was there held that contracts which were to be paid out of the current revenues only, and which could not become a charge upon the county, were therefore not inhibited by the constitutional provision. The county having used the fixtures for one year, under this contract, petitioner presented its claim for

[1] 16 Ala. App. 441.

rent, aggregating $400. The claim was duly filed, audited, and allowed by the board of county commissioners, and the probate judge of the county duly ordered and directed to issue to the petitioner a county warrant for the amount so allowed. These proceedings as to itemizing, filing, allowing, and ordering the issuance of the amount were all regular and in accordance with the statutory provisions. Sections 3317, 2472, and 146 of the Code.

The probate judge declined and refused to issue the warrant, as ordered by the commissioners' court, unless petitioner would indemnify him against loss on account of so issuing the amount.

Petitioner thereupon applied to the circuit court, or the judge thereof, for a writ of mandamus to command the probate judge to obey the order of the commissioners' court, and to issue the warrant. The petition for the writ was full, and set out all the facts, the substance of which is stated above.

The probate judge answered the petition, and admitted all the facts that were necessary to be proven to authorize him to act, and to award the writ of mandamus against him; but attempted to justify his refusal upon various grounds, none of which were availing to him as a defense for not obeying the order of the commissioners' court as section 146 of the Code requires him to do.

## Opinion.

There lies across the doorsill of this discussion a question of prime importance to this appeal, not discussed or passed upon by the Court of Appeals, but which is necessarily involved in the decision reversing the judgment of the circuit court, and in denying the right to mandamus, which was awarded by the circuit court.

It should be said, however, in justification of the Court of Appeals not discussing this question of prime importance, and in deciding the case on an immaterial question, that it decided the only questions discussed by counsel in their brief. No reference whatever is made to this prime question of importance by counsel for appellant or appellee in their briefs; but they proceeded to discuss the question which the trial court had no jurisdiction to decide on an application for mandamus, and which, of course, the Court of Appeals had no jurisdiction to decide on this appeal. A contract is thus declared illegal, void, and unenforceable when one of the parties to the contract was not before the trial court or Court of Appeals.

The duty of the probate judge to issue a county warrant, after a claim has been audited and allowed by the commissioners' court, and after he is directed by the court to "give the claimant a warrant," is statutory, and mandatory to perform a purely ministerial duty, and he has no discretion in the matter. Code, § 146, and citations thereto.

This section has been so construed by this court for nearly a half century, and it has been repeatedly readopted with that construction placed on it. See Com'rs' Court v. Moore, 53 Ala. 25; Jack v. Moore, 66 Ala. 187; Jeffersonian Co. v. Hilliard, 105 Ala. 576, 17 South. 112.

The law on this subject was so well stated by Brickell, C. J., in the case of Jack v. Moore, supra, and restated by the same learned Chief Justice, in 105 Ala. 579, 17 South. 112, more than 20 years thereafter, and after the statute had been twice readopted with the first construction. I can do no better than to restate it, for the guide of the probate judges in the future.

"The issue of warrants on the county treasury, in payment of claims the commissioners' court have allowed and ordered to be paid, is a ministerial duty imposed on the judge of probate in the performance of which he has no discretion, unless the order of allowance is of itself, and on its face, an absolute nullity, imposing no duty, and conferring no rights. When on its face the allowance of the claim is valid, and is the instrumentality for the payment of a claim chargeable on the county, he is without discretion—his duty is plain and simple, to issue the warrant on the county treasury, in obedience to the order of allowance; and, if he refuses, the circuit court of the county, having a general jurisdiction and superintending power over all inferior tribunals, and officers exercising ministerial power within its territorial limits, can by mandamus compel obedience."

As well might a clerk of the circuit court refuse to enter up a judgment, as directed by the circuit court, because he believed it to be infected with error, and to be erroneous.

The law in both cases is mandatory, the duty imposed is purely ministerial, as to which the probate judge, and clerk in such cases, has no discretion or will. The probate judge in issuing the warrant does not act as judge of the court, nor is the office to be performed at all judicial, it is ministerial purely, and the fact that he is judge of a court of record, and the ex officio judge of the commissioners' court, which directs and orders him in the matter, makes no difference. He must obey as if he were a mere amanuensis or stenographer of the court. He is pro hac vice a clerk, and is not expected to know whether or not the claim should or should not be allowed. It is none of his business to inquire as to these matters; unless the order is void on its face, and thus proclaims its own invalidity, he must obey. Whether or not the claim in question is one that should or should not be allowed, or whether or not it is a proper charge against the county, is not one to be litigated or determined by the probate judge on an application to him as clerk of the commissioners' court to issue the warrant, nor by the cir-

cuit judge on an application to compel him to perform a purely ministerial duty in issuing. The circuit judge has no jurisdiction for any such purpose.

One of the parties to the claim is not before the court. The probate judge does not in such proceeding represent the county nor the commissioners' court. The county is therefore not before the judge or court, and of course is not bound by the judgment or order in granting or refusing the writ. Suppose the warrant is issued in this case, as it is sought to be issued; the county is not concluded by it, though its issuance was ordered by the circuit court, and affirmed by this court. It is not conclusive as to the county's liability; it is only authority to the county treasurer to pay. If the county concludes that the allowance or issuance was erroneous, improper, or illegal, it may file a bill in equity to enjoin the payment thereof, and thus these questions can be litigated. Or if the county treasurer should refuse to pay, then the statute provides a summary remedy against him, at or on such hearing, the propriety of allowing and issuing the warrant and the validity of the claim evidenced thereby may be litigated.

The trial before the circuit judge on the mandamus hearing is not to determine whether or not the party has a just and valid claim against the county; the question is whether or not the probate judge ought to issue a warrant, as the statute, and the order of the court, directed him to do. The only fact necessary to show the duty to issue, as said by Judge Brickell in the three cases cited above, is an order of the commissioners' court allowing the claim and ordering the warrant to be issued; if such order is shown, then the probate judge must issue, unless it is void on its face so as to be an absolute nullity, imposing no duty; if the order on its face is valid, he has no discretion; his duty is plain and simple.

It does not follow at all that the warrant to be issued by him is incontestable after it is issued, or the justice and correctness of the claim which it evidences is conclusively established. The time, mode, and manner of so contesting is pointed out in the foregoing cases cited. In Hilliard's Case, 105 Ala. at page 581, 17 South. 114, Judge Brickell points the way. He says:

"If the claims which were audited and allowed are not, as they now appear to be, legally chargeable on the county, or if there be any just defense against them, or if they be excessive, when the warrant issues for their payment, the county may maintain a bill in equity for its cancellation, or its reduction to the amount justly due. Com'rs' Court v. Moore, 53 Ala. 25. The claims having been allowed are not now the subject of suit against the county. The audit and allowance imposed on the judge of probate a mere ministerial duty, to the performance of which he was legally bound."

Another mode is for the county treasurer to refuse to pay. In such case, section 5938 of the Code provides a remedy. Norwood v. Goldsmith, 162 Ala. 171, 50 South. 394; s. c., 168 Ala. 175, 53 South. 84; Brown v. Gay-Padgett Co., 186 Ala. 561, 65 South. 333, and cases cited therein.

If, however, the question of the validity of the claim to be evidenced by the warrant was the question at issue by the mandamus proceeding, I cannot agree to the conclusion of the Court of Appeals that the claim is illegal or void. It appears to me to be perfectly valid and binding as any claim. The mere fact, if it be a fact—which seems to be conceded—that the original contract for the sale of the fixtures was void because at the time it was made it created a debt in excess of the constitutional limit, that such void contract did not prevent the parties from making this second contract, which did comply with the Constitution and laws of the state. It seems to me the law enjoined the duty, much less allowed the parties, to correct their errors and faults, in making the first contract. The first contract was only void, not illegal in the sense that it could not be relieved against, or the error cured if the parties were willing and attempted so to do, as they have done in this case. The fact that one of the parties to the contract is a county, a municipal corporation, makes no difference; the law in such matters is the same in so far as it demands and requires justice to be done. If the United States, or a state, much less a county, attempts to make contracts like the one in question, the law deals with it just as it would with an individual, in requiring it to do justice, and to correct its errors, so that it would not acquire the property of another without rendering proper compensation therefor.

The Supreme Court of the United States has well stated the rule, and applied it to a municipal corporation, though the same is applicable to the state or United States, as well as a county. It states the rule by quoting affirmatively from a decision of the Supreme Court of California, in a case with facts much like these. It is said:

" 'The city is not exempted from the common obligation to do justice which binds individuals. Such obligations rest upon all persons, whether natural or artificial. If the city obtain the money of another by mistake, or without authority of law, it is her duty to refund it, from this general obligation. If she obtain other property which does not belong to her it is her duty to restore it, or if used to render an equivalent therefor, from the like obligation. Argenti v. San Francisco, 16 Cal. 282.' The legal liability springs from the moral duty to make restitution." Chapman v. County of Douglas, 107 U. S. 348, 2 Sup. Ct. 62, 27 L. Ed. 378.

In the same case above quoted from, the Supreme Court of the United States decided

the exact questions decided by the Court of Appeals but reached the opposite conclusion. In that case, a statute authorized the county to purchase a farm for a poorhouse, but put certain limitations upon the right and power, as to amount, mode, and time of payment, just as the Constitution here fixes a limit as to the amount of debts to be incurred. The statutes in this case not only authorize, but require, the county to provide, equip, and maintain a courthouse, which certainly includes lighting it. In that case, the county bought a farm, but the contract was void because it exceeded the powers conferred as to power and mode of payment just as in this case. The court said of it:

"As the agreement between the parties has failed by reason of the legal disability of the county to perform its part, according to its conditions, the right of the vendor to rescind the contract and to a restriction of his title would seem to be as clear as it would be just, unless some valid reason to the contrary can be shown. As was said by this court in Marsh v. Fulton County, 10 Wall. 676, 684 [19 L. Ed. 1040], and repeated in Louisiana v. Wood, 102 U. S. 294 [26 L. Ed. 153], 'the obligation to do justice rests upon all persons, natural and artificial, and if a county obtains the money or property of others without authority, the law, independent of any statute, will compel restitution or compensation.' See, also, Miltenberger v. Cooke, 18 Wall. 421 [21 L. Ed. 864]. The illegality in the contract related, not to its substance, but only to a specific mode of performance, and does not bring it within that class mentioned by Mr. Justice Bradley in Thomas v. City of Richmond, 12 Wall. 349 [20 L. Ed. 453]. The purchase itself, as we have seen, was expressly authorized. The agreement for definite times of payment and for security alone was not authorized. It was not illegal in the sense of being prohibited as an offense; the power in that form was simply withheld. The policy of the law extends no further than merely to defeat what it does not permit, and imposes upon the parties no penalty. It thus falls within the rule, as stated by Mr. Pollack, in his Principles of Contract, 264: 'When no penalty is imposed, and the intention of the Legislature appears to be simply that the agreement is not to be enforced, then neither the agreement itself nor the performance of it is to be treated as unlawful for any other purpose.' Johnson v. Meeker, 1 Wis. 436." Chapman v. County of Douglas, supra.

The above decision has been quoted from and followed in a recent opinion and decision of this court. See Gen. Elec. Co. v. Town of Ft. Deposit, 174 Ala. 179, 186, 56 South. 802. The principles of law decided in these two cases is conclusive of the question as to the right of the parties to rescind the void contract as to the purchase, and make a valid one as to the lease or hire.

If the contract of purchase had provided that the payment should be in cash, and the cash had been paid, or other property given in exchange therefor, the sale and contract would have been valid; it was only void to the extent and for the sole reason that it created a debt in excess of the constitutional limit. The parties therefore not only had the right to reform it or substitute another therefor which was lawful and valid, but it was their duty, right, and justice so to do.

It is fortunate that the justice and right of the case is the law of the case.

In the recent case of Brown v. Gay-Padgett Co., 188 Ala. 423, 66 South. 161, the authorities as to the object and purpose of our constitutional provision fixing a debt limit for counties were reviewed, and the rule announced by the annotation of another decision of this court (Hagan v. Com'rs' Ct., 160 Ala. 544, 49 South. 417, 37 L. R. A. [N. S.] 1061) was adopted.

The purpose is thus stated:

"The clear and unmistakable purpose of the framers of the organic law, in inserting this provision, was effectually to protect persons residing in municipalities from the abuse of their credit, and the consequent oppression of burdensome, if not ruinous, taxation. The mischief to be prevented was the creation of an excessive debt for local improvements or public works, or the loaning of municipal credit, so payable that the burden should not fall upon those who contracted the obligations, or on their revenues, but on posterity."

It was further said in that case:

"The inhibition against creating any new debt was never intended to prevent the county from contracting liabilities for current expenses in anticipation of its annual revenue, and which were to be paid from the revenue."

It is perfectly evident that the parties to this contract, one of them being the county involved in the case last cited, attempted to conform to the rules laid down in that case, and it seems to me they did, and I fail to see anything immoral, illegal, or wrong, and I know of no reason why the contract should not be enforced; no public policy is thereby violated, but good morals and good policy will be promoted thereby. It should be noted—which I have not done—that this claim was to be paid, and is payable, out of the current revenues, not otherwise appropriated. It therefore creates no debt within the meaning of the constitutional provision.

I am authorized to say that Justice SAYRE concurs in the foregoing opinion to the extent that the claim was valid and not illegal or void, but does not concur in the first proposition discussed in the opinion.