4 So.2d 153

**ABRASLEY v. JEFFERSON COUNTY et al.**

6 Div. 896.

Supreme Court of Alabama.

July 29, 1941.

Rehearing Denied Oct. 23, 1941.

Lloyd L. Duggar, of Birmingham, for appellant.

Mullins & Deramus, of Birmingham, for appellee Jefferson County and others.

John S. Foster, of Birmingham, for appellee City of Birmingham and others.

Irvine C. Porter, of Birmingham, amicus curiae.

FOSTER, Justice.

This is a suit filed under the Declaratory Judgments Act of Alabama, Code of Alabama 1940, Title 7, sections 156 et seq., to determine and declare the legal and constitutional status of Jefferson County and the

city of Birmingham in certain aspects of the Voting Machine Act of Alabama, approved August 25, 1939, Acts 1939, page 443, Code 1940, Tit. 17, § 91, as amended by the Act approved July 10, 1940, Acts 1939, page 989.

Different questions are presented in respect to each of them separately. Our conclusions are based on the Act as it now exists without reference to such local legislation as may be hereafter enacted, pursuant to the authority contained in the constitutional amendment to which we will refer.

Taking first the county of Jefferson and its problem as here involved. It is a question of constitutional debt limit under section 224, Constitution, which it is thought is not defintely settled by the recent case of Wharton v. Knight, ante, p. 218, 2 So.2d 310.

■■■ The Voting Machine Amendment to the Constitution, see, Act of March 31, 1939, Special Session of 1939, page 20, in no respect places an obligation on a county which is a limitation on section 224, Constitution. The purpose of that amendment was to grant authority to the legislature, by general or local law, to permit the use of voting machines. It was evidently the result of the decision of this Court in McCall v. Automatic Voting Machine Corp., 236 Ala. 10, 180 So. 695. This amendment is not self-acting, but requires an enabling act or acts. It is not mandatory, but grants merely authority to the legislature so as to relieve the election law of the necessity of uniformity throughout the State in this respect. Its whole tenor is one of subservience to constitutional limitations in all other respects. The legislature has a wide discretion, but it is to be exercised within constitutional requirements. So that while the legislature may make the use of machines mandatory, and require a county to pay for them, such requirement is necessarily limited to the constitutional powers of the county. If the county does not have the funds to be used in paying cash, or sufficient current revenue, and has already become indebted to the full limit of constitutional authority, the mandate is for the time being ineffective, and elections in that event should be conducted as though there were no such requirement. The fact that elections are a necessary function of our Government does not serve to place elections by voting machines as a necessary function so as to supersede constitutional requirements and limitations. It is the province of the legislature to prescribe the priority of payments out of county funds. It has undertaken to do so. See Code of 1940, Title 12, § 121; and in Title 17, section 198 has provided that the fees of the officers of the election shall be paid as preferred claims out of the county treasury. See, also, section 167. And claims made so by law, called involuntary, take precedence over general and voluntary claims. Brown v. Gay-Padgett Co., 188 Ala. 423, 66 So. 161.

The bill alleges that proposals have been made to the county for the sale and for the lease of such machines. But whether for sale or lease, they contemplate that the county will bind itself to pay an amount not limited to current revenue available for the purpose, thereby creating a financial obligation of the county not of a self-liquidating sort. It is immaterial whether consideration for such an obligation is called the purchase price or the lease price of the property.

■■■ We have said that section 224, Constitution, does not prohibit a county which has reached its debt limit from contracting liabilities for current expenses in anticipation of current revenue, and which are to be paid alone from such revenue. Brown v. Gay-Padgett Co., supra; Jefferson County v. State ex rel. Carmichael, 233 Ala. 148, 170 So. 70. But an obligation for operations during a current year cannot be made payable out of revenues from subsequent years without thereby becoming a debt in contemplation of section 224, Constitution.

■■■ An election expense, which may include the rental cost of voting machines, is one of current operation and payable out of revenues of that year. If made payable out of revenues of a succeeding year, it thereby creates a debt against the county in the contemplation of section 224, Constitution.

■■■ The Act of 1939, supra, section 3(h), Code 1940, Tit. 17, § 93, looks to the possible inability to purchase the machines on account of debt limit, or the economic desirability of not doing so, by providing that the county shall (at its option we interpolate) either purchase or rent the machines with or without the option to purchase, provided the rental or lease price shall not exceed ten per cent. of the purchase price. But the constitutional power of a county must be considered in determining whether an option right thus grant-

ed is available. The burden which the law places upon counties to pay election expenses is one imposed by the legislature and not the Constitution. Code of 1940, Title 17, sections 167, 198. And the fact that it is involuntary does not serve to increase the debt limit under section 224, Constitution. But has the effect of making it a preferred claim against the county, taking precedence over general and voluntary obligations. Brown v. Gay-Padgett Co., supra (see 188 Ala. at page 431, 66 So. 161). But when the obligation, whether imposed by law as involuntary or whether it is voluntarily assumed without legal compulsion, is to pay more money than can be supplied by current funds, it is an indebtedness within the Constitution. Brown v. Gay-Padgett Co., supra, 188 Ala. at page 427, 66 So. 161. This does not conflict with the power of the legislature to impose on counties certain expense, as future election costs, applicable to future elections, and to make such costs payable by the county out of revenues received for the year in which the election is had, without creating a debt prohibited by the Constitution.

We now consider the question of the duty of the city of Birmingham as a municipal corporation to supply voting machines, either by purchase or by renting them for use in elections hereafter held in said city.

The election was held under the Act of 1939, supra, on the call of the County Commission of Jefferson County upon a petition filed with it and signed by the requisite number of qualified voters of the county. The residents of the city of Birmingham, as voters of the county, participated as did those in other portions of the county. There was no election held at the instance of the city commission as a city project. Section 3 of the Act, supra, (a) and (d) provides for such separate election projects. And in clause (h) of section 3 and (a) of section 4, Code 1940, Tit. 17, § 94, and in section 6, Code 1940, Tit. 17, § 98, it is provided that in event a county or municipality shall vote in the majority for the use of voting machines, the county board or the city commission shall either purchase the necessary number of voting machines for said county (or) municipality, or shall rent or lease them. And in section 4(f), Code 1940, Tit. 17, § 95, it is provided that a county or city may by a majority vote direct the discontinuances of the use of voting machines. And that where both the county and city have voted separately in favor of their adoption, a subsequent vote by the qualified electors of the entire county in favor of discontinuance will not be considered as a vote to discontinue their use in such city. In clause (g) of section 4, Code 1940, Tit. 17, § 96, it is provided that when the use of voting machines is adopted in any voting precinct or municipality, then voting machines must be used in all general, primary, municipal and special elections held thereafter in any such voting precinct.

We think that the Act means that the county and the city may each or both cause such a separate referendum. Specific reference is made to a situation where they shall both have done so. In that event a county cannot discontinue their use in a city which has by separate election voted favorably. This presupposes that the power and duty to use the machines in a city may be imposed by a vote of the entire county in which there was no separate election by the city voters, and implies that if this is the situation a discontinuance will be operative in such city. And when section 2 of the Act, Code 1940, Tit. 17, § 92, provides that any county or city or other political subdivision of the State may by majority vote of its qualified electors voting thereon authorize and direct the use of voting machines at all elections held in said county or city or other political subdivision of the State, it does not mean less than as thus expressed. That is, that if a county election is held, and votes favorably, voting machines shall be used at all elections held in such county. And in section 4(g), supra, that if they are used in any voting precinct or municipality, they must be used in all general, primary, municipal and special elections held in it. So that if in any city, voting must be by machines in State and county elections under a county-wide referendum, they must be there also used in municipal elections. And if in such city, voting must be by machines in municipal elections under a city referendum, they must be there also used in State and county elections, though there has been no county referendum.

Clause (h) of section 3, provides that in event a county, municipality, or other political subdivision of the State shall vote favorably the county board or city commission shall supply the machines, and so does clause (a) of section 4 and section

6. It does not provide that in any such event the county board and city commission shall do so. But one or the other shall do so, dependent upon whether it is a county-wide vote or merely a city vote. If it is a county-wide vote the county must do so as to all voting precincts in the county, which necessarily includes cities. And if it is only a city vote, that city must do so for use in all sorts of elections in it. If they both have separate referendum elections on the subject and both vote favorably, then under clause (h) of section 3, and (a) of sections 4 and 6, taken literally, each would supply voting machines. But we cannot assume that the legislature intended such duplication of facilities. So in that event this clause could well be satisfied by them jointly and equally doing so. If in such separate referendum elections the county-wide vote should be favorable and the city vote unfavorable, the entire burden would be on the county, with the power of discontinuance by a county vote, though the city would and must use the machines in city elections until the county shall vote for a discontinuance. If in such separate referendum elections, the county voted unfavorable but the city favorable, the entire burden would be on the city; but all elections of every sort thereafter in the city, including State and county elections, would be by voting machines, with no burden as to them on the county.

■■■ True, a city is required to bear the expense of city elections. Code of 1940, Title 62, section 709, Title 17, section 343. But when there has been a county-wide referendum with favorable vote, so as to extend the necessity to use voting machines in a city which has not had a separate referendum, and voting machines are due to be provided by the county, there is no expense authorized by law incident to their acquisition which is caused by the city election. And under such circumstances, there is no provision of law which requires the city to pay the county for the use of the machines, or share in their acquisition. The Act has no such implication, unless there shall be a separate city referendum. For by clause (g) of section 4, supra, if either the county or city has provided such machines effective in a city, they must be used in all sorts of elections in such city, whether general, primary, municipal or special. There is nothing in the Act which contemplates that for such use one will pay the other unless there shall be two favorable referendum elections. That is, if a city votes them in and installs them, while they must be used for State and county elections there is no requirement that the county shall pay for their use in the absence of a favorable county referendum. And so we are unable to find any provision of law which imposes on a city the obligation to pay for the use of machines in a city election when the county as a unit has voted for their county-wide use, unless the city has also voted for them in a city referendum election separately called for that purpose. But if there has been only a county-wide referendum, and that favorable, but the county has failed for any reason to supply the machines in all election precincts in the county, then elections thereafter held in such precincts shall be conducted under existing law without the use of such machines.

The bill seeks declaration on ten separate inquiries. The trial court did not respond to them all seriatim, but it is requested that we do so.

(1 and 2). In answer to the inquiries so numbered, we express our judgment that the city of Birmingham is neither required nor authorized to purchase or rent voting machines for use in municipal primary or municipal general elections to be held in the city of Birmingham during the present or subsequent years, until there shall be a separate referendum election called by the city in which there shall be a favorable vote. If and when a separate referendum in the city shall occur, the city would be under obligation to supply voting machines, and since the county should have already done so, then to pay for one-half of their then value, or make some other satisfactory arrangement for their use.

(3 and 4). We also declare that by virtue of the referendum election heretofore called and held in the county, the County Commission of Jefferson County is authorized and required to supply voting machines for State and county elections in all voting precincts in said county, including cities, and that such machines may also be used in municipal primary and municipal general elections held in the city of Birmingham in the future, until there is a discontinuance pursuant to law. But such authority and duty can only be exercised within the limitation of indebtedness fixed by section 224, Constitution.

(5). Until there shall be a city referendum election called and held by the city on

the subject, and a favorable vote cast for the use of voting machines, the city of Birmingham is not authorized to join the county in the purchase or lease of such machines.

(6, 7, 8 and 9). Section 224 of the Constitution is effective to prohibit the county of Jefferson from incurring any debt beyond the limit there provided for the purchase or lease of voting machines for use in any election in the future in said county, whether it is a municipal or state or county primary, general or special election. The "debt" here contemplated is as we have herein defined it, and as set forth in Wharton v. Knight, supra.

(10). On the assumption that Jefferson County now owes debts equal to the limit provided in section 224, Constitution, we declare that it cannot incur an additional debt by leasing the voting machines for one or more years, with or without an option to buy them, or enter into an obligation to do so, whereby it is undertaken to bind the county to pay for their use a stipulated amount, without making it payable solely out of revenues of the county collected during the year in which they are used for which the payment shall be made.

But the county may without violating section 224, Constitution, rent the machines for use in any election in said county or in any precinct or municipality in the county in which they are required by law to be used, and bind itself to pay for their use only out of current annual county revenue in preference to other claims not preferred by law over such an obligation, but it cannot be in the form of an unconditional obligation so as to be extended to subsequent years for payment, in event of an insufficiency of current revenues.

(11). The bids set forth in the bill of complaint are each in such form and substance as that if accepted they will constitute a debt against the county, and assuming that the county has reached its constitutional debt limit, such debt will not be lawful, but in violation of section 224, Constitution, since the supplemental proposal to rent the machines fixes a liability for the stipulated sum as a fixed charge,

not dependent upon a sufficiency of current revenue either in the year 1941, or in any other year when the current amount is payable, but as framed the amount of the liability imposed during each such year would be an unconditional claim against the county, and therefore payable during subsequent years, if the current revenue is insufficient.

The judgment of the circuit court is modified so as to conform to the views here expressed, and, as modified, it is affirmed.

Modified and affirmed.

All the Justices concur, except KNIGHT, J., not sitting.