36 So.2d 475
#### OPINION OF THE JUSTICES.

No. 88.

Supreme Court of Alabama.

July 30, 1948.

Opinion of the Justices of the Supreme Court in answer to questions propounded by the Governor under Code 1940, Title 13, § 34, as to whether a proposed plan of the Alabama Building Corporation (as organized and empowered under Gen.Acts 1945, pp. 182, 188; Gen.Acts 1947, pp. 498, 500), with respect to construction of a state office building, is violative of constitutional provisions.

92

Questions answered.

The Honorable Chief Justice and
Associate Justices of the
Supreme Court of Alabama
Montgomery, Alabama

Gentlemen:

I am addressing this inquiry to you pursuant to the provisions of Title 13, Section 34, of the Code of Alabama of 1940.

Alabama Building Corporation (herein referred to as "the corporation") has been organized as a public corporation pursuant to the provisions of Act No. 146 adopted at the 1945 Regular Session of the Legislature of Alabama approved on June 23, 1945, as amended by Act No. 646 adopted at the 1947 Regular Session of the Legislature of Alabama approved on October 9, 1947. Under the authorization contained in the said acts, and also in Act No. 147 adopted at the 1945 Regular Session of the Legislature of Alabama approved on June 23, 1945, as amended by Act No. 647 adopted by the 1947 Regular Session of the Legislature of Alabama approved October 9, 1947, it is contemplated that the actions outlined in the next five paragraphs will be taken.

The State of Alabama will convey to the corporation a tract of land owned by the state situated in the City of Montgomery near the present capitol building and suitable for the construction thereon of a state office building. The corporation will cause an office building (herein referred to as "the building") to be constructed on said land at a cost not exceeding the maximum amount provided in said acts, and will finance the construction of the building by the sale, either at public auction or on sealed bids, at not less than par and accrued interest, of its Revenue Bonds (herein referred to as "the bonds") in such amount, not exceeding the amount authorized in said acts, as may be necessary to construct the building and to pay the reasonable and necessary expenses incidental thereto, including the interest which will accrue on the bonds during such construction. The bonds will be payable in annual installments, the first maturity to be one year after the anticipated completion of the building and the last maturity to be thirty years after the anticipated completion of the building, the total principal of and interest on the bonds maturing each year after completion of the building to be as nearly equal as may be practicable. The bonds will bear interest at such rate or rates and will be subject to such rights of redemption as may be determined at the time of the sale of the bonds. Both the bonds and the proceedings under which they will be issued will specifically provide that the principal of and interest on the bonds will be payable solely out of the rents received by the corporation from the building and they shall not in any event constitute an obligation or debt of the state.

The corporation will enter into a lease (herein referred to as "the lease") with the state, acting through the Director of Finance with the approval of the Governor, whereunder the corporation will lease the building to the state for use as offices and quarters for the following, among possibly other departments, boards, bureaus, commissions and agencies of the state: the Department of Corrections and Institutions, the Department of Revenue, the Department of Finance, the Public Service Commission, the Department of Agriculture and Industries, the Department of Commerce, the Department of Conservation, the Department of Education, and the Department of Health.

The lease will run for a period of thirty years, beginning at the completion of the building, during which time the state will have the exclusive use of the entire building. Under the terms of the lease the state will agree to pay to the corporation a fixed monthly rental for the building, payable on the last day of each month for which the rent shall be payable, which shall be such sum as will enable the corporation to pay the principal of and interest on the bonds as said principal and interest respectively mature, plus such additional sum as will create and maintain a reserve fund in an amount equal to one year's principal and interest requirements on the bonds. The lease will provide that

the said reserve fund shall constitute a trust fund to be used solely to pay any installments of rent which may not be paid by the state when due so as to prevent a default by the state under the lease, and when the amount of the monthly installments of rent remaining unpaid under the lease shall equal the moneys then on hand in the said reserve fund, the said moneys shall be applied toward payment of the then remaining monthly installments of rent so that at the end of the term covered by the lease the moneys in the said reserve fund shall be fully exhausted.

As additional rental the lease will require the state to pay to the corporation such sums as from time to time may be necessary to maintain the building in good repair and to pay the premiums on all insurance against loss by fire and other hazards and use and· occupancy insurance to the extent of the full insurable value thereof. The lease will provide that in the event of destruction of or damage to the building by fire or other casualty the rent during the time necessary to repair or reconstruct the building shall be abated in the proportion that the floor area of the damaged or destroyed parts of the building which shall not be capable of use bears to the entire floor area thereof. The total rental which would be payable by the state under the terms of the lease will be less than the minimum rental which the architects for the building will certify would be required to be paid to an individual or to a private corporation as rental for the same building if it should be erected and owned by an individual or a private corporation.

The bonds will be secured by a pledge of the monthly installments of rent required to be paid under the terms of the lease, and by a mortgage and deed of trust to a corporate trustee. Such mortgage and deed of trust will cover the lease, the building, and the property conveyed to the corporation, and will contain agreements by the corporation whereunder it will be required to apply the proceeds received by it from any fire and other hazard insurance for the repair or restoration of the building, and to apply the proceeds received by it from any use and occupancy insurance for payment of the principal and interest installments on the bonds pending completion of the repairs or restoration of the building made necessary by the damage or destruction giving rise to the payment under such insurance. The mortgage and deed of trust will provide that in the event of default ·thereunder it will not be subject to foreclosure by sale of the property, but in lieu of foreclosure the remedy shall be by mandamus or by the appointment of a receiver in equity to collect the rents and apply the same for payment of the principal of and interest on the bonds.

Under the provisions of Title 13, Section 34, of the Alabama Code of 1940, I respectfully request your opinion on the following important constitutional questions:

1. Will the contemplated conveyance by the State to the corporation violate Section 99 of the Constitution of Alabama?

2. Will the lease create a debt against the state within the meaning of Section 213, as amended, of the Constitution of Alabama?

3. Will the making of the lease or the issuance of the bonds violate Section 93, as amended, of the Constitution of Alabama?

4. Will the issuance of the bonds create a debt against the state within the meaning of Section 213, as amended, of the Constitution of Alabama?

5. Will the rental provided for in the lease be a claim required to be prorated by Section 213, as amended, of the Constitution of Alabama in the event there is, at the end of any fiscal year of the state, insufficient money in the state treasury to pay all proper claims duly presented?

Respectfully yours
JAMES E. FOLSOM
Governor

JEF:S

Wm. Alfred Rose, Ellene Winn, and White, Bradley, Arant & All, all of Birmingham, filed brief amicus curiae.

To the Hon. James E. Folsom,
  Governor of Alabama,
    Montgomery.
Sir:

In response to your inquiry of June 16, 1948, relating to the proposal for the State to convey to the Alabama Building Corporation a tract of land convenient for an office building to be built by the corporation and to be leased to the State for use by it in housing certain State departments, we do not think it is necessary to consider sections 99 and 93 of the Constitution, since we think the proposal would be an attempt to create a debt of the State in violation of section 213 of the Constitution as amended, effective August 2, 1933 (No. XXVI—Article XXIII). The amendment referred to adds a clause "to prevent further deficits in the state treasury."

Your inquiry describes the proposed financial set up. Reference is made to it for the full scheme.

Some of the controlling features are: (1) That the corporation is an instrumentality of the State; (2) The State is deeding the lot to the corporation and leasing from it the house to be built on it, and is dealing with its own creature, an arm of the State; (3) The lease is for thirty years and binds the State by an unconditional promise to pay the corporation a monthly rental for the use of the building by its departments (which could reasonably include the corporation itself). (4) At the expiration of thirty years the State shall have paid under the terms of its lease an amount equal to the bond requirements of the corporation and their full payment. (5) There is no provision for a conveyance then to the State, but the title will remain in the corporation which is an arm of the State, and the State could by proper steps obtain all the benefits of absolute ownership without further expense to it. (6) The promise of the State to pay rent is to be assigned by the corporation as security for the bonds it is to issue to finance the building.

Prior to the budget amendment to section 213, supra, and upon the question of whether certain transactions were in violation of that requirement as then constituted, in the case of Hall v. Blan, 227 Ala. 64, 148 So. 601, the Court was dealing with warrants, payable from the educational trust fund, drawn against appropriations made. The purpose of the suit was to test the right of the treasurer to pay warrants payable during a certain fiscal year out of funds of the succeeding fiscal year, and whether long time warrants bearing interest drawn by virtue of appropriations in excess of revenue for the fiscal year in which they were payable constituted debts prohibited by section 213, supra. The Court referred to many of our cases defining debt as applied to section 213, supra, and referred to Brown v. Gay-Padgett Hardware Co., 188 Ala. 423, 66 So. 161, as laying down a rule for counties which was applied to the State, holding that except as authorized to make temporary loans not exceeding $300,000 in any one year, section 213, supra, demands that the State shall be run on a pay as you go basis, but as in the Brown case, supra, "current obligations within the revenues levied and assessed, and in process of collection, are not debts merely because such revenues have not yet come into the treasury. They are considered as constructively in the treasury." [227 Ala. 64, 148 So. 607.] See, also, to the same effect, Norton v. Lusk, 248 Ala. 110(3), 26 So.2d 849; Abrasley v. Jefferson County, 241 Ala. 660, 4 So.2d 153; Farned v. Bolding, 221 Ala. 217, 128 So. 435; Turnipseed v. Blan, 226 Ala. 549(2), 148 So. 116; Allgood v. Stallings, 197 Ala. 121, 72 So. 383. In those cases, supra, this Court very carefully pointed out the difference between a debt within the limits of the Constitution and current obligations payable only out of current revenue levied and assessed for the fiscal year; and held that each year is a fiscal unit and when a county has reached its debt limit current expenses should be met out of current revenues, except those which are created by superior authority and not the result of the voluntary act of the county: that a county cannot borrow money for current expenses without creating a debt.

We are not here dealing with an obligation imposed upon the State by the Con-

stitution, but one proposed as the voluntary act of the legislature. And we are not here dealing with the creation of a temporary obligation for expenses of a current fiscal year, payable solely out of current revenues for that year, as in several of the cases cited above, but with an unconditional obligation to pay money whether it is available that year or not.

If the amount of the stipulated monthly rental were to be payable only out of the current revenues to be received for the fiscal year in which it is payable, a different principle would apply. We would then be called upon to determine whether future legislatures could be bound so that they could make no change in their annual operating expenses.

The warrants treated in Hall v. Blan, supra, were ratified by the amendment, supra, to section 213, supra, but in order to prevent further deficits in the State treasury it was thereby in effect made unlawful to pay the funds of the State in any one fiscal year for ordinary claims against the State payable in a preceding year; and other provisions seeking to accomplish the purpose declared. This amendment was analyzed in Abramson v. Hard, 229 Ala. 2, 155 So. 590.

In the opinion In re Opinions of the Justices, 225 Ala. 460, 143 So. 900, as in Alabama State Bridge Corporation v. Smith, 217 Ala. 311, 116 So. 695; Scott v. Alabama State Bridge Corporation, 233 Ala. 12, 169 So. 273; Rogers v. Garlington, 234 Ala. 13(8), 173 So. 372, we expressed the view that certain appropriations did not impose a debt against the State since there was no obligation imposed on the State to pay money at all events. It does not appear that either of those appropriations was in excess of the revenues for that year, and in neither case did the act purport to create an obligation of the State to pay money. The question in the inquiry was "would the provision herein cause the State to assume the bonds and to pay the same, and would this be a violation of section 213." There was an appropriation of $300,-000 to the State Highway Department to pay the Alabama State Bridge Corporation rent on fifteen toll bridges. The State did no more than make the appropriation. The question was did the State incur a debt prohibited by section 213 in making the appropriation when it incurred no obligation, though the Highway Department was authorized to lease the bridges. There was no indication that funds were not available to meet the appropriation. We were saying only that such appropriation and such authority of the Highway Department to lease did not create a debt of the State inhibited by section 213, supra. As an appropriation, it did not appear to be under the ban of the case of Hall v. Blan, supra, and in the Alabama State Bridge Corporation case, supra, the appropriation was of a surplus only.

It was held in the Alabama State Bridge Corporation cases, supra, and in Harman v. Alabama College, 235 Ala. 148, 177 So. 747, and other cases, that the State can incorporate a State agency and authorize it to create debts without creating a State debt in violation of section 213, supra. Norton v. Lusk, supra, 248 Ala. at page 117[4], 26 So.2d 849; Kimmons v. Jefferson County, 204 Ala. 384, 85 So. 774. We said they are not State debts, and although they are debts of State institutions, those institutions are not subject to suit by virtue of section 14 of the Constitution.

In the Opinions of the Justices, supra, we did not say that the Highway Department did not purport to incur a debt, but we said that the appropriation with authority to it to lease the bridges did not create a State debt.

But in the instant inquiry, the proposal is expressly to bind the State at all events to pay money monthly for a period of thirty years. That is what a debt is.

The cases cited from other states do not seem to have dealt with a constitutional provision such as our budget amendment to section 213, supra, and have not adopted the principle declared in Brown v. Gay-Padgett Hardware Co., supra, and other cases, defining a debt prohibited by the Constitution.

It follows that we think the proposal would violate section 213 of the Constitution as amended. We therefore answer your inquiry number 2 in the affirmative. We do not think that it is necessary to answer the other numbered inquiries.

SIMPSON, J., wishes to add as his own view that he thinks the so-called Alabama State Bridge Corporation cases, supra, and perhaps a few others, do, as ably argued by learned counsel in the amicus curiae brief, give some hint that the proposed scheme might escape the interdiction of section 213 of the Constitution, but that the long-established and well-reasoned interpretation placed on this constitutional provision by our other cases for so many years, including the Brown v. Gay-Padgett Hardware Co., the Hall v. Blan, and other cases, supra, makes the scheme so patently a State debt as to clearly place it under this constitutional ban, as indicated in the foregoing opinion.

Respectfully submitted,

LUCIEN D. GARDNER,
Chief Justice.
JOEL B. BROWN
ARTHUR B. FOSTER
J. ED. LIVINGSTON
THOMAS S. LAWSON
ROBERT T. SIMPSON
DAVIS F. STAKELY
Associate Justices.