Robia Holding Corporation, Plaintiff, *v.* James J. Walker and Others, Defendants.

Supreme Court, New York County, February 19, 1930.

*Eppstein & Hirshfield*, for the plaintiff.

*Arthur J. W. Hilly, Corporation Counsel*, for the defendants.

WALSH, J. Plaintiff, a taxpayer, brings this action against defendant officials of the city of New York to have declared null, void and unconstitutional (1) a resolution of the board of estimate and apportionment of the city of New York passed May 15, 1929, which in effect provided for the construction of a triborough bridge connecting the boroughs of Manhattan, The Bronx and Queens, and of two vehicular tunnels connecting the boroughs of Brooklyn and Manhattan and the boroughs of Brooklyn and Richmond, respectively, and the introduction in the municipal assembly of a local law providing for the imposition and collection of rates and tolls for the use of said bridge and tunnels; (2) local laws Nos. 3 and 8 of the city of New York authorizing the board of estimate and apportionment to establish and fix tolls for the use of such bridge and tunnels. The complaint alleges that as and for the initial expense of such projects the board of estimate and apportionment has already reserved the sum of $3,000,000 for corporate stock and serial bond authorization to provide for the preparation of plans and the construction of such bridge, and the sum of $2,000,000 for a like purpose with respect to one of said tunnels, and that provision has already been made by the city to expend the sum of approximately $150,000,000 on these projects; that the city of New York is without power to establish and fix tolls for the use of such bridge and tunnels, and is without authority to collect or authorize the collection of such tolls and charges when fixed; that, by reason of the absence of such power, the said bridge and tunnel will not be self-sustaining, revenue-producing improvements, and hence the foregoing resolution and local laws are unconstitutional and void. The answer of the defendants admits all the averments of fact in the complaint, but denies that the acts complained of are illegal. The defendants move for judgment on the pleadings on the ground that the complaint does not set forth facts sufficient to constitute a cause of action.

Bridges and tunnels, as well as streets, are public highways. Their construction, management, operation and control, though primarily within the police power of the State, have always been regarded as under the special care, supervision and control of the municipal governments, and their construction and maintenance are clearly within the provisions of the Constitution a city purpose. (*City of N. Y.* v. *Brooklyn City R. Co.*, 232 N. Y. 463, 468.) The

highways are held by the municipality in trust for the benefit of the general public. The fundamental idea of a highway is not only that it is public, but also that it is public in all its parts for free and unobstructed passage thereon by all persons desiring to use it. Any restriction on such use can be imposed only by the sovereign power. As an instrumentality of the State, the power of the municipality with respect to the highways is measured by the authority which the State has lodged in it, and it can exercise no power beyond that expressly granted or necessarily implied by the grant. Section 20 of the General City Law (added by Laws of 1913, chap. 247) provides, among other things, as follows: " § 20. Subject to the constitution and general laws of this state, every city is empowered: * * * 9. To establish, construct and maintain, operate, alter and discontinue bridges, tunnels and ferries, and approaches thereto. * * * 23. To exercise all powers necessary and proper for carrying into execution the powers granted to the city * * *."

It is also provided in section 47 of the Greater New York Charter (as amd. by Laws of 1916, chap. 615, § 1) that " The board of aldermen shall have power to provide by ordinance * * * for the building of bridges over, and of tunnels under any stream or waterway within or adjoining the limits of the city; * * * and for any of the foregoing purposes may create loans and authorize the issue of bonds or other evidences of indebtedness, to pay for the same, payable at such times and in such manner, subject to the limitations contained in section one hundred and sixty-nine of this act, as it may by ordinance prescribe. * * *" Subdivision 9 of section 169 of the Greater New York Charter (Laws of 1901, chap. 466, § 169, as amd. by Laws of 1929, chap. 441, § 1) provides for the issuance of corporate stock and serial bonds of the city of New York. It contains the following restriction or limitation upon the expenditure of the proceeds of the sale of such corporate stock and bonds in the so-called " pay-as-you-go " provisions thereof: " The city of New York shall not, except as hereinafter provided, expend any part of the proceeds of sales of corporate stock or serial bonds for other than revenue-producing improvements. * * * The term ' revenue-producing ' as used in this section shall apply to that class of improvements, including among others those for docks, water and rapid transit purposes, the expenditure for which shall, at the time it is authorized, be determined by the board of estimate and apportionment to have a substantial present or prospective earning power."

The Home Rule Act, as found in article 2-A of the General City Law, contains not only the grant of special powers above set forth,

but also a general grant of power to a city to " regulate, manage and control its property and local affairs." The " local affairs," over which regulation, management and control are delegated, are affairs within the jurisdiction of the city by the law of its being. (*Brooklyn City R. R. Co.* v. *Whalen,* 191 App. Div. 737.)

The building of bridges and tunnels is made an affair within the jurisdiction of the city by its charter. (Greater New York Charter, §§ 47, 48, 169, 242.) (Laws of 1901, chap. 466, § 47, as amd. by Laws of 1916, chap. 615, § 1; § 48, as amd. by Laws of 1906, chap. 636; § 169, as amd. by Laws of 1916, chap. 615, § 2, and Laws of 1929, chap. 441, § 1; and § 242, as amd. by Laws of 1905, chap. 629, § 14, and Local Laws of New York (1925), Local Law No. 3.) These sections further make provision for the creation of loans for such purposes and the issuance of bonds to pay for the same. The restriction upon the issuance of such bonds which provides that the proceeds thereof, with certain enumerated exceptions, shall not be expended for other than revenue producing purposes, defines " revenue producing " improvements as being that class of improvements, included among others, as are for docks, water, and rapid transit purposes, the expenditure for which, at the time it is authorized, shall be determined by the board of estimate and apportionment to have a substantial present or prospective earning power. (Greater New York Charter, § 169.) Governmental undertakings frequently are supported in whole or in part by charges made upon those who avail themselves of the advantages afforded thereby.

The charge of tolls for the use of bridges, tunnels and wharves, for the supply of water, the building of sewers, is not uncommon. The purpose of the imposition of tolls is to secure some compensation for the use of facilities provided at great cost from the class for whose needs and uses they are essential. The city of New York will be put to great expense to provide the facilities for travel which will be afforded by the proposed bridge and tunnels. The Legislature, by prohibiting the issuance of bonds to pay for improvements unless they are revenue producing, and permitting the board of estimate to determine which improvements have a present or prospective earning power, clearly gave to the city the right to make the charges which it now seeks to impose. Nor is the exaction of a custom by the municipality for the purpose of securing reimbursement for the outlay necessitated in the creation and maintenance of the facilities provided an interference with the right of the public to the unobstructed use of the highways.

That the city of New York is vested with the power to impose tolls is further evidenced by reference to the provisions of the Home Rule Amendment to the Constitution (Art. 12) and by the Enabling Acts

[City Home Rule Law] subsequently passed to carry same into effect (Laws of 1924, chap. 363, as amd. by Laws of 1928, chap. 670, and Laws of 1929, chap. 646). In the Home Rule Amendment it is provided: " § 3. Every city shall have power to adopt and amend local laws not inconsistent with the constitution and laws of the State, relating to * * * the transaction of its business, the incurring of its obligations, * * * the acquisition, care, management and use of its streets and property, * * * and the government and regulation of * * * its inhabitants and the protection of their property, safety and health." This amendment, if it accomplished the purpose intended, enlarged the powers of municipalities concerning matters relating to their affairs, while diminishing the power of the Legislature with respect thereto, for, at the same time that the above change in the organic law of the State was made, the following restriction upon the power of the Legislature was also incorporated into the Constitution (Art. 12, § 2): " The legislature shall not pass any law relating to the property, affairs or government of cities, which shall be special or local either in its terms or in its effect, but shall act in relation to the property, affairs or government of any city only by general laws which shall in terms and in effect apply alike to all cities except on message from the governor declaring that an emergency exists and the concurrent action of two-thirds of the members of each house of the legislature."

The City Home Rule Law, enacted pursuant to the constitutional requirements, empowered every city to adopt and amend local laws in relation to the property, affairs or government of a city, including but not limited to those enumerated in section 3 of article 12 of the Constitution, employing in the making of the grant substantially the language of the Constitution.

The foregoing grants to cities, when read in connection with the restrictions placed upon the Legislature, clearly indicate a delegation of power to the city to enact the local laws here attacked. The building of bridges and tunnels is a city purpose, a matter which has always been regarded as within the scope of municipal government. Their construction by the city is expressly authorized by its charter and the General City Law. They are local improvements, made by it; its property, paid for by it. The power to build and maintain necessarily implies the right to secure the moneys required to defray the cost of such construction and maintenance. The imposition of tolls is one method of meeting this cost. Such imposition is not an interference with the right of the public to travel on these highways and to have the unobstructed use thereof, but is merely subjecting such use to the payment of a charge to reimburse the city for the expense incurred in connection with the expenditure

made to provide and maintain them. It is a matter relating to the transaction of its business, the incurring of its obligations, and the acquisition, care, management and use of its property. It concerns its property, affairs and government, and hence is within the powers delegated to it.

Motion to dismiss complaint is granted.