For the reasons assigned, the judgment appealed from is affirmed.

9 So.2d 523

## REUTHER v. CITY OF NEW ORLEANS et al.

No. 36768.

July 6, 1942.

Rehearing Denied July 20, 1942.

Harry McEnerny, Jr. and Leon S. Cahn, both of New Orleans, for appellant.

Francis P. Burns, City Atty., Leo. L. Dubourg, Asst. City Atty., and James C. Henriques, Atty., Board of Liquidation, City Debt, all of New Orleans, for appellees.

McCALEB, Justice.

By Act No. 6 of the Extra Session of 1899, the City of New Orleans and Board of Liquidation, City Debt, were authorized to issue certain bonds known as Public Improvement Bonds. Section 1 of the Act provided that the bonds were to be dated July 1st, 1900, and were to mature in fifty years and that the rate of interest was not to exceed 4% per annum. The statute further provided:

"* * * Said bonds shall contain a clause authorizing the city of New Orleans, after July 1, 1942, to call and pay the principal of the same at par and accrued interest, in such manner and form as it may deem best. The interest on said bonds after July 1, 1942, and the principal thereof shall be paid by the levy after the year 1942 of the 1 per cent. debt tax aforesaid until all the principal and interest (of) said bonds are fully and finally paid, and the proceeds of said 1 per cent debt tax are specially dedicated to said purpose on and after July 1, 1942."

In accordance with this grant of power, the City of New Orleans issued $12,000,000

of Public Improvement Bonds and inserted in each of the bonds the following clause:

"After July 1st, 1942, the principal and interest of this bond, are to be paid by the levy of the said one percent Bond Tax until all the principal and interest of said Bonds are finally paid. The City of New Orleans is authorized by, and has power under said Act No. 6, of the General Assembly of the year 1899, to call and pay at par and accrued interest this Bond, and all other Bonds of this issue, which may be outstanding and unpaid after July 1st, 1942, in such manner and form as it may deem best."

On June 5th, 1942, the Commission Council of the City of New Orleans and the Board of Liquidation, City Debt, in pursuance of the right and power vested in the City by Act No. 6 of the Extra Session of 1899 to call at par after July 1st, 1942, any and all of the outstanding Public Improvement Bonds in such manner and form as it deemed best, adopted resolutions wherein, in lieu of calling and paying the entire issue, a plan was proposed to the holders and owners of the outstanding bonds to reduce the rate of interest payable after July 1, 1942, from 4% to 2% and also providing that specified numbers of the bonds be called annually by lot in each year following 1942 and ending 1950, at which time all of the bonds would be finally liquidated in principal and interest. The plan suggested by these resolutions is conditioned upon the City of New Orleans obtaining the consent of 90% of the holders of the outstanding bonds and it provides that, if 90% or more of the holders of the bonds agree to the terms and conditions of the plan, then the other bondholders, who do not give their assent, will be paid par for their bonds with accrued interest at 4% upon a date not later than December 1, 1942.

About a week subsequent to the adoption of the resolutions by the City and the Board of Liquidation, the plaintiff, Mrs. Marie Reuther, wife of C. S. E. Babington, Jr., alleging that she is the holder and owner of 33 Public Improvement Bonds of the City of New Orleans (which would be affected by the plan), filed the present suit in the Civil District Court for the Parish of Orleans against the City of New Orleans and the Board of Liquidation, City Debt, to have the resolutions adopted by them declared null and void and for the issuance of an injunction restraining them from carrying out the plan proposed in said resolutions.

In conformity with the prayer of the plaintiff's petition, a rule nisi was issued by the District Court for the defendants to show cause why a preliminary injunction should not be granted. On the day fixed for the trial of the rule, the City and the Board of Liquidation appeared and resisted plaintiff's demand. In their answer, the defendants admit that plaintiff is the holder and owner of 33 Public Improvement Bonds which will be affected by the proposed plan, but they deny that the plan is invalid in any respect maintaining that they have the absolute right and power to liquidate the outstanding bonds in the manner suggested by the plan provided the voluntary consent of 90% of the bondholders is obtained.

On the issues thus formed by the pleadings, as supplemented by the exhibits at-

tached thereto, the case was submitted to the trial court for final decision on its merits by agreement of the parties. The court, after due consideration of the matter, being of the opinion that the proposed plan of the defendants was valid, denied plaintiff's application for a preliminary and permanent injunction and dismissed her suit. Plaintiff has appealed from the adverse judgment and the case has been submitted to us for decision on the briefs of the opposing counsel.

In challenging the legality of the plan proposed by the defendants, plaintiff advances the following contentions in her petition and brief:

"(a) That·the said City of New Orleans and said Board of Liquidation, City Debt, are without right, power or authority to adopt and carry into effect the provisions of said plan proposed in said resolutions.

"(b) That it is ultra vires the powers of both the City of New Orleans and Board of Liquidation, City Debt, to adopt and carry out said plan as proposed in said resolutions.

"(c) That the City of New Orleans and Board of Liquidation, City Debt, have no power, right or authority to call and pay said bonds until after July 1, 1950, for the reason that had they decided to call said bonds before said date, that the method and manner of calling said bonds should have been set forth in the text of the bond, which was not done.

"(d) That the text of said Bonds contains no provisions for calling said bonds by lot, and the City never covenanted that

a partial redemption of the bonds would be effectuated in this manner.

"(e) That the City of New Orleans and Board of Liquidation, City Debt, could not, when the bonds were issued, have provided in the text of said bonds that only a portion of said bonds might be redeemed annually as is provided for in said plan, and therefore, as it could not have been so provided when the bonds were issued, the retirement of said bonds in annual installments cannot now be made, except and unless the said plan can be decreed to be a refunding operation, in which event the plan could not be carried into effect for the reason that under the Constitution and laws of the State of Louisiana these said bonds can only be refunded under the provisions of Act 4, of 1916.

"(f) That the entire proceeds of the 1% debt tax after July 1, 1942, is dedicated to the payment of said Public Improvement Bonds of the City of New Orleans, and that the Board of Liquidation, City Debt, is not authorized to use only a part of said tax as it is proposed to do in the said plan.

"(g) That the proposal in said plan of reducing said rate of interest cannot be validly agreed to by the City of New Orleans and by the Board of Liquidation, City Debt, for the reason that the power to enter into such an agreement has never been conferred upon the City of New Orleans or upon the Board of Liquidation, City Debt, by statute.

"(h) That if said plan is carried into effect the 1% debt tax will cease to exist for the reason that the said plan is in truth and in fact a refunding operation."

We shall discuss the foregoing propositions in their respective order.

The first contention of the plaintiff is that the City of New Orleans and the Board of Liquidation are without right or power to adopt and carry into effect the provisions of the plan proposed in the resolutions of date June 5th, 1942. This point is based upon the premise that the proposed plan for liquidating the bonds by reducing the interest from 4 to 2% and providing that the bonds be called by lot from the year 1943 until the year of their maturity, 1950, makes a substantial change in the bonds and in their method of payment and that neither Act No. 6 of 1899, Ex.Sess., nor any other statute authorizes the City and the Board of Liquidation to alter its obligation.

■ We are unable to discern merit in this argument. By Act No. 6 of the Extra Session of 1899, the City was authorized to issue $12,000,000 of bonds bearing interest not to exceed 4% and maturing in the year 1950. It was provided in the statute that the bonds shall contain a clause authorizing the City after July 1st, 1942, to call and pay the bonds at par and accrued interest "in such manner and form as it may deem best". It is clear, therefore, that power has been conferred upon the City to call all or any number of the outstanding bonds after July 1st, 1942, and further that it has been vested with the discretion of determining the method by which they are to be called and paid. In the bonds issued by it, the City has, in accordance with the statute, reserved to itself the right to call and pay these bonds after July 1st, 1942, in such manner and form as it may deem best. At the time that the plaintiff acquired the bonds, which she holds, she was unquestionably aware of the conditions contained therein and, under her contract, she knew that, after July 1st, 1942, the City had not only the right to call her bonds for payment but also that it was invested with the authority to liquidate its obligation to all outstanding bondholders "in such manner and form as it may deem best".

■ The plan of the City is not only eminently fair to all of its bondholders but its proposal is in strict conformity with the authority vested in it by Act No. 6 of the Extra Session of 1899. The City merely suggests to all of its bondholders that, in lieu of its calling all of the bonds for payment as of July 1st, 1942, it will waive its right to do so provided that at least 90% of the bondholders consent to continue the bonds in force and effect (subject to call by lot) until 1950 at a reduced rate of 2% instead of 4% interest. Surely, plaintiff in her capacity as a taxpayer is without interest to complain since the plan has for its underlying purpose a saving to the taxpayers of considerable money. And, in her capacity as a bondholder, she has no basis for her attack forasmuch as the bonds which she holds provide that they are callable at par after July 1st, 1942. If she does not see fit to consent to the proposed plan, she will receive in full the value of her bonds plus accrued interest. Furthermore, the plan is conditioned upon the consent of at least 90% of the bondholders and, unless that number agree, the City will be required to devise other means of liquidating its obligation.

■ In addition to this, plaintiff is clearly without interest to object to other bondholders consenting to the plan as that is purely a matter of agreement between those bondholders and the City, and, as we have above stated, if she fails to agree and 90% of the bondholders give their consent, the City will perform its obligation to her by paying her in full with accrued interest.

■ The second proposition advanced by the plaintiff that the proposed plan is ultra vires is fully answered by what we have said with respect to her first contention. The plain letter of the statute and of the bond gives the City the right to call and pay the bonds in any manner it deems best. Hence, power is expressly conferred upon the City to liquidate these bonds by any method which it believes to be advisable and for the best interest of all concerned.

The third contention made by the plaintiff is that the City and the Board of Liquidation have no power or authority to call the bonds until July 1st, 1950, the date upon which they mature, for the reason that, in order to avail itself of the provisions of Act No. 6 of the Extra Session of 1899, providing that the bonds are callable after July 1st, 1942, the City should have inserted in the text of the bonds at the time they were issued the method, manner and time of calling them. In other words, plaintiff maintains that the provision contained in Section 1 of the Statute that "said bonds shall contain a clause authorizing the city of New Orleans, after July 1, 1942, to call and pay the principal of the same at par and accrued interest, in such manner and form as it may deem best", should be inter-

preted to mean that, in order for the City to have availed itself of its right to call the bonds, it should have inserted in the bonds which it issued the manner and form by which the right to call would be exercised.

■ This argument is not impressive. The bonds contain a provision identical with the language of the statute that the City is authorized to call them after July 1st, 1942, "in such manner and form as it may deem best". The statute cannot be construed to mean that the City was required at the time it issued the bonds to provide the method by which they would be called because the language used merely declares that the bonds "shall contain a clause" authorizing the City, after July 1st, 1942, to call the bonds "in such manner and form as it may deem best". Such a clause was inserted in all of the bonds issued. Surely, it is not reasonable to suppose that the Legislature intended that the City should be forced to decide in 1900, when the bonds were issued, the manner or method by which the bonds would be called in 1942. The direct language contained in the act does not justify such a conclusion. On the contrary, by vesting in the City the authority to liquidate the bonds after July 1, 1942, in such manner as it deemed best, it is plain to us that the lawmakers sought to give the City full discretion to ascertain in 1942 and not in 1900 the best means by which its obligation to its bondholders could be fulfilled.

■ The fourth contention of the plaintiff is that, since the text of the bonds does not contain provisions for calling them for

payment by lot and, since the City did not, at the time the bonds were issued, covenant that their partial redemption would be effected in the manner suggested by the plan, it is without power to place in operation the plan proposed in the resolutions. This point is identical with plaintiff's third contention and is fully answered by what we have hereinabove said. The fact that the text of the bond does not set forth the manner in which the bonds will be called after July 1, 1942, is unimportant since the statute specifically grants to the City the right to call the bonds in any manner it deems best.

■ The fifth contention of the plaintiff is that the City and Board of Liquidation could not, when the bonds were issued, have provided in the text of the bonds that only a portion of the bonds might be redeemed annually as is provided for in the proposed plan and that, therefore, since it could not have been so provided when the bonds were issued, retirement of the bonds in annual installments cannot now be made unless the plan could be regarded as a refunding operation in which event (so plaintiff says), the plan could not be carried into effect for the reason that the bonds can be refunded only under the provisions of Act No. 4 of 1916.

This contention is founded upon a mistaken premise. We are not aware of any reason why the City could not have made provision at the time it issued the bonds for calling them annually after July 1st, 1942. On the contrary, the statute clearly gives to the City the right to call and pay the bonds

after July 1, 1942, in such manner as it deems best. We are also at a loss to understand how the proposed plan can be regarded as a refunding operation. The bonds are to be paid after July 1, 1942, out of the proceeds of the 1% Debt Tax, and the proposed plan merely provides for a method by which the obligation of the City may be liquidated at a reduced interest rate if 90% of the bondholders agree.

■ The sixth contention of the plaintiff is that, since the entire proceeds of the 1% Debt Tax after July 1st, 1942, are dedicated to the payment of the bonds, the Board of Liquidation is not authorized to use only a part of that tax as the City proposes to do under the plan.

We find no merit whatever in this point. There is nothing contained in the proposed plan which indicates that the entire proceeds of the 1% Debt Tax will not be used after July 1st, 1942, to pay the principal and interest of the bonds. Nor is it shown by plaintiff that any diversion of this 1% Debt Tax (dedicated after July 1st, 1942, to the retirement of the bonds) is contemplated by the City.

■ The seventh contention of the plaintiff is that the proposal contained in the plan for reducing the rate of interest of the bonds cannot be validly agreed to by the City of New Orleans and the Board of Liquidation for the reason that the power to enter into such agreement has never been conferred upon them by statute. This point is fully answered by what we have already said in connection with points 1 and 2.

Finally, plaintiff maintains that, if the proposed plan is carried into effect, the 1% Debt Tax will cease to exist for the reason that the plan is in truth a refunding operation.

The point is not tenable. The proposed plan of the City cannot be regarded as a refunding operation. It is nothing more than a method by which the existing obligation may be fully retired in a manner authorized by statute and is made dependent upon the consent of 90% of the holders of the outstanding bonds. There is no change made in the bonds and the tax levied to retire them does not cease to exist in case the plan is adopted. A refunding operation contemplates an alteration in the form of the debt and, generally, in the time and manner of payment. See Jones on Bonds & Bond Securities, Vol. 1, §§ 101 and 385. No change in its principal obligation is proposed in the scheme submitted by the City to its bondholders. The bonds remain the same, the maturity is the same, and the tax levied to secure the payment of the obligation is the same. The only alteration proposed by the City is that the holders of 90% of the bonds agree that, in lieu of the exercise by the City of its right to call the bonds as of July 1, 1942, they will accept a lower interest rate from that date until the bonds are finally called or retired when they mature. But this is merely a method of retirement dependent upon the will of the bondholders. It does not involve the refunding of the obligation.

For the reasons assigned, the judgment appealed from is affirmed.

On Application for Rehearing.

PER CURIAM.

In an application for rehearing, the plaintiff asserts that, notwithstanding the fact that the proposed plan of the City of New Orleans is silent with respect to the disposition of any surplus of the proceeds of the annual 1% Debt Tax which might be left after the City complies with its yearly obligation to the holders of the Public Improvement Bonds as proposed in the plan, the City nevertheless intends to devote any such surplus to the payment of the interest of certain other bonds issued by it. The City, in answer to this application for rehearing, concedes that it intends to use the surplus amount of the proceeds of the 1% Debt Tax for this purpose. In view of this admission, it becomes necessary for us to answer the plaintiff's contention that the proposed plan of the City is invalid because, under Section 1 of Act No. 6 of the Extra Session of 1899, the proceeds of the 1% Debt Tax, after July 1, 1942, are specially dedicated to the retirement of the Public Improvement Bonds and that the City is without right to devote any surplus of the proceeds of said tax for any other public purpose.

We think it is clear that, while the statute dedicates the proceeds annually collected after July 1, 1942, from the 1% Debt Tax to the payment of interest and principal of the Public Improvement Bonds, it was never the intention of the Legislature that, if there was a yearly surplus of proceeds after the City had fully discharged its annual obligation to the bondholders under a plan of retirement agreeable to the

holders of the bonds, such surplus could not be used to defray the interest and principal on other bonds issued by the City. In fact, the provisions of Section 8 of Act No. 4 of 1916, Act No. 182 of 1924, Act No. 3 of the Extra Session of 1927 and Act No. 2 of the Extra Session of 1930, contemplate that any surplus of proceeds of the 1% Debt Tax, after payment of the City's annual obligation to the bondholders of the Public Improvement Bonds, may be used in payment of the interest of bonds issued under the authority of those laws. In other words, as long as the proceeds derived from the collection of the 1% Debt Tax are sufficient to take care of the bonds to be retired under the plan proposed by the City, any surplus of said proceeds can be used for the purposes contemplated by the statutes above cited.

For the reasons assigned, the application for rehearing is refused.

O'NIELL, C. J., concurs in the decree.

PONDER, J., took no part.