47 So.2d 162

**HILLARD v. CITY OF MOBILE et al.**

I Div. 420.

Supreme Court of Alabama.

June 15, 1950.

Groves C. Hillard, of Mobile, pro se.

Harry Seale, of Mobile, for appellees.

LIVINGSTON, Justice.

This suit was instituted in the Circuit Court, in Equity, of Mobile County, Alabama, by Groves C. Hillard. He alleges that he is a resident of the City of Mobile, a home owner, owner of real and personal property subject to taxation in said city, a taxpayer, a water user from the waterworks system of Mobile, and the owner and holder of one of the general refunding bonds of the City of Mobile due on January 1, 1956; and that he brings this suit in his own behalf and on the behalf of every other holder or holders of any of the general refunding bonds or other outstanding bonds of the City of Mobile.

Respondents are the City of Mobile, a municipal corporation, Charles A. Baumhauer, J. R. Mitternight and E. M. Megginson, as members of the Board of Commissioners of the City of Mobile, the Water Works Board of the City of Mobile, a public corporation, B. S. Butler, Armistead

Leake and H. C. Slaton, as directors of the Water Works Board of the City of Mobile.

The pleadings are rather voluminous, but the real purpose of the litigation is to test the validity of the actions and proceedings of the respondents in their efforts to secure and maintain an adequate water supply for the City of Mobile, its inhabitants, business enterprises and industries. Specifically, the bill of complaint seeks to enjoin the Water Works Board of the City of Mobile and the City of Mobile from entering into a proposed contract between the board and the city in respect to a water supply; to test the Water Works Board's authority or power to acquire property by eminent domain; to test the authority or power of the board to issue securities which are exempt from all taxation under the laws of the State of Alabama; and to determine whether the property acquired by the board is exempt from ad valorem taxation under the laws of Alabama. The bill prays for general relief.

The cause was submitted to the court below under an agreement of the parties as to the time and place of submission, and the manner or method of the examination of witnesses. The trial court made and entered a special finding of facts and law in the cause and denied the prayer for an injunction.

For a clear understanding of this opinion we think the following undisputed facts should be here noted.

■ The Water Works Board of the City of Mobile is a public corporation organized under and by virtue of the provisions of Chapter 7, Article 5, sections 394–402, Title 37, Code of 1940. And in the case of Water Works Board of City of Mobile v. City of Mobile, Ala.Sup., 43 So. 2d 409, we held that said board was validly organized.

For brevity we will hereinafter refer to the Water Works Board of the City of Mobile as the Board, and the City of Mobile as the City.

On account of its growth and expansion within the last decade, Mobile has outgrown its presently existing water works system and source of supply. Although the City is still below or within its constitutional debt limits, the amount necessary to acquire or construct a water works system to adequately meet the present and future needs of the City would create debts over or beyond said constitutional debt limits.

On February 27, 1950, the Board adopted a resolution authorizing the issuance of revenue bonds for the purpose of acquiring lands and to do all things necessary for the construction of an adequate system for supplying water to the City of Mobile, including the execution of a deed of trust or mortgage as additional security for the payment of said revenue bonds. On the same day the Board adopted a resolution authorizing the execution of a contract with the City for water supply. On March 1, 1950, the Board, under the provisions of section 169 et seq., Title 7, Code of 1940, instituted validation proceedings in the Circuit Court, in Equity, of Mobile County, for the purpose of validating said revenue bonds and all proceedings had or taken in connection therewith including all covenants and provisions contained in the resolutions above referred to. On March 22, 1950, the court rendered its decree validating the revenue bonds, covenants, contracts, etc.

On April 11, 1950, the City adopted a resolution authorizing the execution of the contract with the Board for a water supply as contained in the Board's resolution of February 27, 1950, but with certain specified changes therein. By resolution of April 12, 1950, the Board approved said changes. Thereafter still other changes were made in the contract, which changes were approved on May 10, 1950 by resolution of both the City and the Board. On May 10, 1950, the validation decree of March 22, 1950 was, on motion of the Board, amended to reflect these changes.

■■ It seems to be assumed by appellant in argument that if the validation decree of March 22, 1950 could not be amended in material aspects on May 10, 1950, because more than thirty days had elapsed from its rendition and the court had thereby lost jurisdiction, then the amended bonds, deed of trust, contracts, etc., were themselves invalid. The assumption is fal-

680

lacious. In the first place, a validation proceeding under section 169 et seq., supra, is purely discretionary, and does nothing more than foreclose further inquiry into the questions decided, except by an appeal perfected within the time provided by the statute. In other words, such proceeding sets up a statutory estoppel "as to the validity of such obligations against the unit issuing them, and against all taxpayers and citizens thereof, and the validity of such obligations or of the tax or other means provided for their payment." MacMahon v. Baumhauer, 234 Ala. 482, 175 So. 299, 304. Such a proceeding does not foreclose changes as such. The changed bonds, contracts, etc., may not have the protection of the validation decree, but they are not invalid because of the lack of such protection. We lay to one side then the effect of the amendment of the validation decree and proceed to a determination of the validity of the bonds, indentures, contracts, etc., as amended.

█ This appeal presents for review only such questions as were raised by assignments of error and insisted upon in brief. 2 Ala.Dig., Appeal and Error, ☞ 1075, 1079. Assignments not argued in brief are considered waived and are not here considered.

It is argued that the proposed contract, as last amended, between the City and the Board for a supply of raw water is violative of sections 22, 222 and 225 of the Constitution of Alabama of 1901. The alleged prohibited provisions are contained in sections 4, 11 and 12 of the contract as last amended, and read as follows:

"4. For the period commencing on the first day of the month following completion of the Industrial Water System in accordance with said plans and specifications, such date to be not later than March 1, 1952, and ending on the date of the final payment in full of the Industrial Water Revenue Bonds issued by the Board in connection with the construction of said Water System, the Board agrees to meet the City's requirements for raw water to the extent of 25,000,000 gallons per day and for such water the City agrees to pay at the rate of $288,000 per year, payable in monthly installments of $19,000 on or before the 15th day of each month, subject to the provisions of Paragraph 6 hereof.

"The Board warrants that it has entered into two contracts one with Lock Joint Pipe Company, a corporation, for manufacturing the pipe, and one with Carruth Pipe Corporation, for laying pipe, each of said contracts requiring completion of the work prior to July 1, 1951, and each of said contracts providing for liquidated damages of $200.00 for each day of delay over the time fixed in the contract, and the Board covenants that in any contracts to be let in the future for building the power and pumping station, and in the contract for constructing the dam, spillways, etc., it will require payment of liquidated damages, and will fix such damages at $200.00 per day until December 31, 1951, and thereafter the liquidated damages will be fixed at $400.00 per day.

"The Board is advised by the Consulting Engineers that water should be ready for delivery to contract customers during the month of September, 1951, and in no event later than January 1, 1952.

"The Board covenants and agrees that it will begin delivery of water to the City on or before February 28, 1952, and agrees to exercise diligence in completing the project.

"The Board covenants that any sums paid to it under any of the construction contracts as liquidated damages, and referred to above, will be paid by the Board into the Revenue Fund created under section 502 of the Indenture."

"11. In consideration of the services to be rendered by the Board to the City under the provisions of this contract, including the maintenance at all times of an adequate supply of water for the City's fire hydrants and the maintenance of a reserve supply of ten million gallons as provided in paragraph 5 hereof, and also in consideration of the credits to be received by the City under the provisions of paragraph 12 of this contract, the City agrees that, if on any June 1st or December 1st the total amount on deposit to the credit of the Bond Service Account and the Reserve Account (Special accounts created under the pro-

visions of section 506 of the Indenture) shall be less than the principal and interest requirements, as defined in the Indenture, for the ensuing twelve (12) months, the City will advance to the Board on or before the 20th day of such month, a sum sufficient to make up such deficiency; provided, however, that the City shall not make any such advance if it shall then be in default in the payment of the interest on or the principal of any bonds of the City which are now outstanding or any bonds issued to refund the same or in making any deposits to the credit of the interest and sinking funds for such outstanding bonds or any bonds issued to refund the same. Advances made by the City under the requirements of this paragraph are hereinafter referred to as 'Advance Payments' for which the City is entitled to repayment in the manner provided in paragraph 12 hereof.

"12. If in any calendar month after completion of the System and while there shall exist no event or default as defined in section 802 of the Indenture, there shall exist in the Bond Fund, above described, amounts in excess of the aggregate amounts referred to in paragraph 11, together with the amount required by the Consulting Engineers for the Reserve Maintenance Fund as set forth in section 506, subsection (c) of the Indenture, then and in such event such excess funds shall constitute excess reserve funds. So long as there remain any Advance Payments for which the City has not already been reimbursed, such excess reserve funds may be used to reduce or eliminate, as the case may be, the obligation of the City to make payment for water to be used during the ensuing month."

Paragraph 6 of the proposed contract, referred to in paragraph 4, is as follows:

"6. In the event the water used by industrial customers and customers other than the City of Mobile produces revenue, which when added to the revenues to be paid to the Board by the City under paragraph 4 of this Contract, are in excess of a sum sufficient to pay for the ensuing fiscal year all operating and maintenance (including reserve maintenance) costs and all Principal and Interest Requirements as defined in section 101(f) of the Indenture securing the bonds of the Board then, and to that extent of such excess, the City, subject to any prior right of an industrial underwriting customer to reduce its minimum use of water as provided in its contract with said Board, may reduce the above mentioned minimum of 25,000,000 gallons and such reduction shall continue to the extent of such excess as long as the excess exists, provided that in no case shall the minimum be less than 20,000,000 gallons daily and the amount payable by the City to the Board under said paragraph 4 shall be decreased in proportion to such reduction, and provided further that no such reduction shall be made unless the amount then to the credit of the Reserve Account shall be not less than the requirement therefor under the provisions of section 506(b) of the Indenture."

Stripped of all surplusage, under the terms of the proposed contract between the Board and the City, the Board agrees to furnish the City with a sufficient volume of raw water to adequately meet the City's present and future requirements, including a standby volume to meet emergencies. The City agrees to pay therefor the amount named in the contract, and at the times and in the manner provided therein.

In the absence of a showing to the contrary, we assume, of course, that the City of Mobile has the ordinary public powers which are conferred on municipal corporations. "Nothing is more important, as a sanitary and police regulation, than an abundant supply of water. Its uses are too well known to require notice here." Intendant & Town Council of City of Livingston v. Pippin, 31 Ala. 542.

A supply of water for the extinguishment of fires and other ordinary public uses is one of the necessities of a city, and under its general authority the City of Mobile had and has the power to make a proper contract for such supply. Our cases are conclusive to the effect that the corporate authorities are entrusted with the discretion to determine how a water supply can best be obtained, and if they find it to the best public interest to enter

into contracts carefully guarded for the accomplishment of that end they have a right to do so. Livingston v. Pippin, supra; City of Greenville v. Greenville Water Works Co., 125 Ala. 625, 27 So. 764; Weller v. Gadsden, 141 Ala. 642, 37 So. 682, 3 Ann.Cas. 981; City of Gadsden v. Mitchell, 145 Ala. 137, 40 So. 557, 6 L.R.A., N.S., 781, 117 Ann.St.Rep. 20.

Appellant's argument is, in substance, that a contract calling for future periodical payments creates a debt of the city in violation of sections 222 and 225 of the Constitution of 1901. In a few states the rule has been adopted that, as soon as such a contract is entered into indebtedness to the amount of the aggregate future payments is deemed to be incurred, irrespective of any condition connected with the furnishing of the water. See, Dillon on Municipal Corporations (5th Ed.) p. 359, section 196. But the same section of that authority also states that:

"But the *weight of authority and, as we think, reason also favor a more liberal construction* of the constitutional limitations upon the power to incur indebtedness. Municipal contracts calling for future payments extending over a series of years usually relate to water, light, or some other municipal matter which is regarded as of prime or·vital importance to the inhabitants. If the municipality has already reached its constitutional limit of indebtedness, it is obviously debarred from purchasing or establishing a plant of its own, and is forced to contract with some corporation or individual that is willing to incur the large expense necessary in erecting works upon the faith of the city paying annual rentals or other stipulated compensation. A construction, therefore, of these provisions which will debar the city from entering into a contract covering a period of years by making the aggregate amount to be earned and to be paid thereunder immediate indebtedness of the city, would be disastrous to the city's interest; and a city which has already reached the constitutional limit of indebtedness or whose indebtedness closely approaches that limit, would be as effectually debarred from making such a contract as it is from pur-

chasing or contracting for the construction of works of its own. The courts have therefore recognized a distinction between a debt in the sense of the Constitution, and a contract for a future indebtedness to be incurred upon the performance by the contracting party of the agreement out of which a debt may arise. They also recognize a distinction between the latter case and one where an absolute debt is created at once, as by the issue of bonds for the erection of a public improvement, though such debt is payable in the future by installments. In the one case the indebtedness is not considered to be created until the consideration has been furnished; in the other the debt is created at once, the time of payment only being postponed. The courts, therefore, have generally held that contracts by municipalities *for a supply of water, light, or other like necessary by* which the municipality binds itself for the payment of an annual rental or other periodical consideration for the water or light furnished, do not create indebtedness until the property contracted for has actually been furnished, and the municipality may contract to make such yearly or periodical payments notwithstanding that the aggregate of such payments during the stipulated life of the contract may exceed the amount of the indebtedness limited by the Constitution or by a charter provision. But it has been held that if the city has reached the full limit of its indebtedness, a contract calling for future payments on the property is void under the constitutional provision, if the city has no money in the treasury yielded by current taxation or otherwise to pay for the property either at the time when the contract was made or when the property was delivered and accepted, although there were sufficient funds on hand to pay for it at the time fixed by the contract for payment."

We think the foregoing quotation from Dillon on Municipal Corporations is a correct statement of the principles of law which have application here, so far as it goes, but our cases have gone further in its application to provide that each year is a fiscal unit for a county, or city, or even the state, and while such political

corporation may anticipate and provide for its necessities for years to come and make present contracts for them, it can only do so, without creating a debt, by making the amount of the same payable each year out of current revenues received for that year; otherwise it constitutes a debt within the meaning of our Constitution.

■ In construing the legal status of the present situation, we are content to approve it as not constituting a debt of the City of Mobile by construing it to mean, as we do, that payments for water to be delivered in future fiscal years under said contract are to be made only out of revenues which the City derives during that fiscal year. That legal status was first given effect in this State in the case of Brown v. Gay-Padgett Hardware Co., 188 Ala. 423, 66 So. 161. Since that time we have had numerous occasions to apply the principle. The latest is the Opinion of the Justices, 251 Ala. 91, 36 So.2d 475.

■ Paragraph 11 of the contract between the City and the Board, under the terms of which the City contracts for a water supply to meet its normal demands occasioned by the growth of the City, and obtains a reserve supply to service all fire hydrants and to meet fire hazards, is a reasonable provision of a considered contract and is a valid obligation on the part of the City.

■ The provision of such paragraph that payments for such future supply and fire protection are not to be paid if revenues pledged by the City to meet the principal and interest and sinking fund requirements of outstanding bonds of the City are insufficient to meet such principal and interest and sinking fund requirements, is a provision to protect the priority of such outstanding bonds of the City, insofar as the payments required under paragraph 11 of said contract are concerned, and such provision does not create a debt of the City in violation of section 222 or 225 of the Constitution of the State of Alabama.

■ This view also answers the contention that the contract violates section 400 of Title 37, Code of 1940.

■ We are also of the opinion that the contract between the Board and the City is not violative of section 22 of the Constitution of Alabama. It does not impair the obligation of any contract with the existing bond holders of the City.

■ Section 398, Title 37, Code of 1940, as amended by the Acts of the Legislature of 1949, see Pocket Part, section 398, Title 37, specifically confers on the Board the power of eminent domain, and exempts the property and income of such corporation from all taxation in the State of Alabama.

■ Section 400, Title 37, Code of 1940, as amended by the Acts of the Legislature of 1949, see Pocket Part, section 400, Title 37, exempts all bonds of the Board, the income therefrom and all mortgages and other instruments executed as security therefor, from all taxation in the State of Alabama.

In our opinion, from the evidence, the City's needs are urgent, and, further, that the contract which it proposes to enter into with the Board for a supply of raw water is for the best public interest, and is one carefully guarded for the accomplishment of that end.

We have studiously considered all assignments of error argued in brief and find no error therein. The decree of the lower court is therefore affirmed in so far as it is affected by the foregoing discussion.

Affirmed.

BROWN, FOSTER, LAWSON, SIMPSON and STAKELY, JJ., concur.