134 So.2d 746

Porter KING

v.

CITY OF MOBILE et al.

1 Div. 994.

Supreme Court of Alabama.

Nov. 16, 1961.

110

Armbrecht, Jackson, McConnell & De-Mouy, Mobile, for appellant.

Jos. D. Phelps, Sp. Asst. Atty. Gen., and Fred G. Collins, Mobile, for appellees.

MERRILL, Justice.

Appellant, as a taxpayer of the City of Mobile and State of Alabama, and a holder and owner of a Bankhead Tunnel Revenue Refunding and Improvement Bond of the City of Mobile, filed a bill of complaint against the City of Mobile, its commissioners and the Highway Director of the State of Alabama, seeking a declaratory judgment as to the validity of a proposed agreement between the City of Mobile and the State Highway Department. The trial court held the agreement valid and appellant has appealed.

In 1955, the City of Mobile issued revenue bonds to provide for the building of the Conception Street Expressway and the refinancing of Bankhead Tunnel, a two-way traffic tube under the Mobile River. Appellant owns one of those bonds.

Later, the State of Alabama and the Bureau of Public Roads of the Federal government made plans for the construction of Interstate Route 10, a highway routed through the City of Mobile and following the general alignment of the Conception Street Expressway up to the Bankhead Tunnel. The plans for the interstate highway call for two tubes, one to handle the east bound traffic and one to handle the west bound traffic.

The proposed agreement recites that the City of Mobile and the State of Alabama have agreed that it is necessary and desirable to both the City and the State to use the existing Bankhead Tunnel as a tunnel facility for one of the traffic tubes. The second tube or tunnel would be constructed parallel to and adjacent to the Bankhead Tunnel without any cost to the City. Upon completion of the work, the City of Mobile agrees to convey to the State of Alabama the existing Bankhead Tunnel for the nominal consideration of $1. The State will then lease and rent the two tunnels to the City for the sum of $1 per year until such time as the outstanding indebtedness on the Bankhead Tunnel is finally paid and retired, and tolls will continue to be collected at both tunnels until the indebtedness has been paid. The proposed agreement was made an exhibit to the bill.

The trial court found that there was a justiciable controversy, that the City and the State of Alabama were legally authorized to make and enter into the agreement;

that the State was authorized to purchase the Bankhead Tunnel and lease it back to the City of Mobile; that the continued imposition of traffic tolls on both tunnels would not constitute an unconstitutional debt of the City or the State; that the City is legally authorized to amend the original Bond Resolution upon the consent of the holders of seventy-five per cent of the principal amount of outstanding Bankhead Tunnel Revenue Refunding Bonds; and that the rights of the present holders of the bonds not consenting are not impaired by the agreement.

■ The argument in support of appellant's first assignment of error is that the City is not legally authorized to make the agreement. It is argued that the City has no power to dispose of the property because there has been no compliance with Tit. 37, § 477(1), Recompiled Code, Act No. 843, Acts of Alabama 1953, p. 1135, which permits the disposal of City property "not needed for public or municipal purposes." Appellant is correct that such an ordinance has not yet been passed. But it would be premature at this time. When the construction of the additional tunnel is completed, it will be unnecessary that the City continue to hold title to Bankhead Tunnel because it will then be part of the interstate highway system and not strictly part of the City's street system.

■ It is also argued that the City has no power to lease the Bankhead Tunnel from the State. Title 37, § 507, Code 1940, provides in pertinent part:

"Whenever in the judgment of the council of a city or town, it may be necessary or expedient for the carrying out and full exercise of any power granted by this title, the said town or city shall have full power and authority to acquire by purchase the necessary lands, or rights, easements, or interests therein, thereunder, or thereover, * * *."

A lease is an interest in land and certainly the statute permits a city to hold a leasehold interest in property. "Power to acquire property implies the power to lease, or enter into a contract to purchase." 10 McQuillin, Municipal Corporations, § 28.10, p. 20 (3rd Ed.).

Assignment of error 2 charges that the court erred in holding that the State of Alabama is legally authorized to enter into the agreement.

■ It is argued that the State can neither purchase a tunnel nor lease one, even if it could purchase it. It is undisputed that the Bankhead Tunnel will be part of the right of way of the interstate highway and the Director of the State Highway Department is specifically given the authority to acquire rights of way deemed necessary, either by purchase or condemnation. Act No. 566, Acts of Alabama 1955, p. 1230; Tit. 23, § 25(1/2), Recompiled Code, 1958. The Legislature of the State has plenary power over the streets of a city except as limited by the Constitution, and this rule applies to a tunnel which is an extension of a state highway system. Chamberlain v. Board of Commissioners of City of Mobile, 243 Ala. 662, 11 So.2d 724.

■ We have defined highways as "every thoroughfare which is used by the public, whether it be a carriageway, a horseway, a footway, or a navigable river." Rodgers v. Commercial Casualty Ins. Co., 237 Ala. 301, 186 So. 684, 686. In Davenport v. Cash, 261 Ala. 380, 74 So.2d 470, 471, we stated several definitions of highways and said—" * * * it will be noted that through them all there seems to be running the general idea of a current way of public passage." In Robia Holding Corporation v. Walker, 136 Misc. 358, 239 N.Y. S. 659, 661, the court said that "Bridges and tunnels, as well as streets, are public highways." From these authorities and the statutes relating to tunnels passed by the Legislature, we think it is obvious that tunnels are and can be part of the state highway system, and are included under the statutes giving the proper State author-

ities the power to purchase rights of way for highways.

The leasing of both the tunnels to the City of Mobile is the method by which the outstanding indebtedness on the Bankhead Tunnel is to be liquidated. It is shown that one of the requirements of the Federal Bureau of Roads is that the consolidated facility become toll free as soon as the present indebtedness is liquidated.

Act 160, Acts of Alabama 1945, p. 204, authorizes the State Highway Director to "enter into all necessary contracts and agreements * * *, and to do all other things necessary to secure the full benefits to the state provided by" the Federal-Aid Road Act, as amended and supplemented. And Section 2 of Act 450, Acts of Alabama 1957, p. 612, provides:

"Should the density of traffic on the Interstate Highway System require the construction, as a part of the Interstate Highway System, of another tunnel or bridge parallel with and in close proximity to a then existing toll facility which has been incorporated into the Interstate System then the newly constructed tunnel or bridge shall be considered as a part of the original facility and tolls shall be allowed to be collected on the newly constructed facility to pay the costs of operation and maintenance, and for the retirement of the debt existing on the toll facility."

The agreement provides for the approval by the Governor as required by Tit. 47, § 55, as amended. We cannot say that the State is without authority to lease the tunnels to the City for the period required to liquidate the existing indebtedness.

It is next argued that the $1 per year rental to be paid by the City under the lease is not restricted to current revenues received by the City for such year. It is then argued that "Failure to so restrict such rental payments creates a debt which violates the constitutional limitation upon municipalities, Section 225, Constitution of

1901; Hillard v. City of Mobile, 253 Ala. 676, 47 So.2d 162."

No part of Sec. 225 of the Constitution or any particular holding in the Hillard case is pointed out or argued in brief. The lease is contemplated for a period of 34 years unless the indebtedness is paid sooner than 1995. In the absence of any showing that the City of Mobile is over its constitutional debt limit, we cannot say that the addition of $1 per year for 34 years to its indebtedness violates any part of Sec. 225 of the Constitution or is in conflict with the Hillard case.

Assignments of error 6 and 7 charge that the court erred in holding that the Original Bond Resolution could be amended upon receipt of consent of the holders of seventy-five per cent of the aggregate principal amount of the outstanding bonds, and in holding that this did not violate the rights of any holder who did not consent.

"No impairment of obligation of a contract results from an ordinance that affects the contract but does not materially destroy, diminish or affect any right thereunder." 5 McQuillin, Municipal Corporations, § 19.43, p. 590 (3rd Ed.).

Here, the bondholders have the income from both tunnels pledged to the payment of the bonds and there is no showing that the entering into the contract will destroy, diminish or affect any right of the bondholders. See Opinion of the Justices, 249 Ala. 525, 32 So.2d 303.

In Scott v. Alabama State Bridge Corp., 233 Ala. 12, 169 So. 273, 278, we said in a case involving the freeing of the toll bridges in Alabama:

"Our conclusion is the proposed proceedings under the act need not await the consent of all bondholders, and that, under the facts of the case, the decree fixing 76 per cent. or more, as the majority whose consent will be sufficient to put the leasing feature of the act into effect, is due to be affirmed."

**114**

To like effect, see Ahlborn v. City of Hammond, 232 Ind. 12, 111 N.E.2d 70; Reuther v. City of New Orleans, 201 La. 209, 9 So. 2d 523.

No argued assignment of error sustains the contention that the trial court committed reversible error. Accordingly, the decree is affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.