SAVOY, Judge.
Plaintiff, a qualified voter and taxpayer in the Parish of Calcasieu, Louisiana, has filed a suit in the instant case against the governing body of this parish, namely, the Police Jury, praying that an injunction issue against said body and decreeing a lease agreement entered into between it and Hercules, Inc., dated May 15, 1967, to be null and void.
The district judge, in an excellent written opinion, has discussed fully the issues involved and has, in our opinion, correctly disposed of all of the issues raised by plaintiff-appellant. Accordingly, we adopt his opinion as our own, to-wit:
“This is a suit filed by a taxpayer of the Parish of 'Calcasieu seeking to enjoin the Police Jury of the Parish of Calcasieu and its members from carrying out or attempting to carry out the provisions of a certain Lease Agreement dated May 15, 1967, entered into by and between the Parish of Calcasieu and Hercules, Incorporated and, in particular, to enjoin the issuance of any bonds provided to be issued under the terms of said Lease Agreement. ’ A rule to show cause why a preliminary injunction should not issue was made returnable today. The plaintiff also asks that, after trial on the merits of the case, there be judgment decreeing the invalidity of the Lease Agreement dated May 15, 1967, and decreeing a permanent injunction.
“The case is submitted to the Court on a stipulation agreed upon by the parties and on the pleadings and annexed documents. The stipulation provides that this hearing dispose of all issues on the rule for a preliminary injunction and on the merits of the case.
“A number of legal questions related to this case have heretofore been resolved by the Courts of this State in Miller v. Police Jury of Washington Parish, 226 La. 8, 74 So.2d 394; LeBlanc v. Police Jury of the Parish of Rapides, La.App., 188 So.2d 131; and Hebert v. Police Jury of West Baton Rouge Parish, La.App., 200 So.2d 877, decided on June 13, 1967, by the Court of Appeal, First Circuit, in which writs were refused by the Supreme Court of Louisiana. The present case raises two issues, as shown in the petition and the briefs filed by the attorneys herein, which were not raised in the cases cited above. The facts of this present case are not in dispute.
“The Lease Agreement was signed on May 15, 1967, by the Parish and Hercules for the construction and operation by Hercules of a chemical plant in the Parish, the cost of which is to be originally provided by the issuance of industrial revenue bonds by the Parish as authorized by Article 14, Section 14, paragraph (b-3) of the Louisiana Constitution and R.S. 39:991 to 39:-1001, inclusive.
“On May 22, 1967, the Police Jury called an election which was held on June 24, 1967, at which the resident property taxpayers of the Parish authorized the issuance of a maximum of $60,000,000 of revenue bonds of the Parish, under the provisions of above cited constitutional and statutory provisions. The proposition sub *302 mitted at the election was carried by a substantial majority in both number and amount of voters and assessments 'and, on June 26, 1967, the Police Jury of the Parish officially promulgated the results of said election. As thus empowered, the Parish is now prepared to issue bonds in accordance with the Lease Agreement in the initial amount of $20,000,000 for the purposes stated above and in the proposition submitted to the voters.
“The legal issues presented here arise from the fact that the interest of Hercules in the land upon which the industrial facilities are to be constructed, and which are to be conveyed to the Parish, are presently held under a lease of the lands to Hercules from certain Pujo heirs (hereafter called ‘Pujo lease’), the stipulated term for which is for a period of twenty-five years, commencing January 6, 1960, and expiring January S, 1985.
“The plaintiff’s petition emphasizes the fact that under the Lease Agreement Hercules is to construct an industrial plant on a portion of these leased lands, and is to purchase and install therein the leased equipment, and thereupon is to transfer to the Parish under all lawful warranties fee title to the building and the leased equipment, and to the right of occupancy of the leased land, all as is provided in detail in Sections 2.12; 2.24; 3.2; 4.12; and 8.9 of the Lease Agreement.
“The contention is made that the issuance and sale of bonds under this Lease Agreement is illegal for the reason, first, that the proposed sale of Hercules to the Parish, insofar as the right of occupancy is concerned, is not such acquiring as is anticipated under the provisions of Sections 991 to 1001, inclusive, of Title 39 of the Louisiana Revised Statutes of 1950; and second, that such acquisition of the right of occupancy by the Parish and the leasing of this right to Hercules will have the legal effect of uniting or combining the qualities of both debtor and creditor of the right of occupancy in Hercules, so as to extinguish the right, thereby confusing and defeating the purposes of the Lease Agreement with Hercules, which Lease Agreement provides for the issuance and sale of the proposed bonds. The latter contention is based upon Article 2217 of the Louisiana Civil •Code.
“The issues will now be considered in the order stated. The Lease Agreement requires Hercules, as a step in the procedure, to deposit $360,000 with the Morgan Guaranty Trust Company, to provide for payment of all rentals now or hereafter to become due under the Pujo lease until its expiration on January 5, 1985. This is intended to protect the Parish and Hercules to assure that the Pujo lease will continue during its entire term. It is further provided in the Lease Agreement that if a fee title to the Pujo leased land is acquired by Hercules, either prior to or during the life of this Lease Agreement, the fee title thereof will be conveyed to Parish without additional cost, as set forth in Sections 2.12, 3.2, and 8.9 of the Lease Agreement.
“Under the Lease Agreement, the Parish will purchase from Hercules the building to be constructed by Hercules and the equipment to be installed by Hercules therein, and the right to occupy the leased land, upon which the building will be erected, until January 5, 1985.
“R.S. 39:991 provides in pertinent part that the funds derived from the sale of the revenue bonds shall be used ‘to acquire industrial plant sites and to acquire, purchase, construct or improve industrial plant buildings and necessary property and appurtenances thereto. * * * ’ (Emphasis ours) One means of acquiring a plant site is by purchase of the fee title thereto and another is by leasing same from the owner.
“The greater power of owning property in full fee includes the lesser right of acquiring and holding property under a lease or any other appropriate contract. There is nothing in the applicable statute to *303 indicate that the Legislature intended to restrict the means of acquisition.
“In 10 McQuillin, Municipal Corporations, Sec. 28.10, page 22, the following statement appears:
“ Tower to acquire property implies the power to lease, or enter into contract of purchase, or to lease with an option to purchase.’
“In King v. City of Mobile, 273 Ala. 109, 134 So.2d 746, it was argued that the City had no power to lease the Bankhead Tunnel from the State under a statutory provision authorizing the City to acquire by purchase lands, or rights, easements, or interests therein. The Court in that case held that the statute permitted the City to acquire and hold a leasehold interest in the property, citing the above quotation from McQuillin.
“In United States v. Hibernia Bank Building, [D.C.] 76 F.Supp. 18, it was contended that the power of condemning fee title did not include the lesser right of condemnation of office space for a temporary use. The Court in that case held that the greater power of condemning the fee included the lesser interest of temporary use.
“And in 38 American Jurisprudence, Section 484, the rule is stated as follows:
* * the powér to acquire property by purchase or otherwise includes the power to acquire such property by lease. The greater includes the lesser * * sM
“For the reasons stated, in the absence of any restriction by the Legislature in the statute, this Court concludes there is no merit to the contention that the industrial plant site must be acquired in full fee ownership.
“The other related contention is whether or not the conveyance by Hercules to the Parish of ‘the exclusive right of occupancy, possession and use’ during the life of the Pujo lease is a sufficient acquisition of the ‘leasehold’ right by the Parish of the plant site under the provisions of R.S. 39:991.
“The Courts of this State have held in a number of decisions that the right of occupancy, although a right and obligation forming a part of the lease, may be sold independently of other rights and obligations of the lease. The purchaser in such a case does, of course, assume the risk of his right of occupancy being lost by failure of the principal lessee to pay his rent, or of his right being lost due to a violation of the terms of the basic lease, or obligations imposed upon a lessee by law. In such case, however, the purchaser of the right of occupancy holds his rights subject to the lease, but he does not become personally bound by the lease.
“In Morrison v. Faulk, [La.App.] 158 So.2d 837, the Court explained the distinction between the sale of a lease or the unexpired term thereof, and the sale of a right of occupancy of the leased premises, as follows:
“ ‘The distinction recognized in our jurisprudence between the sale of a lease, or the unexpired term thereof, and the sale of the right of occupancy is that the purchaser of a lease or the unexpired term thereof becomes obligated to pay the rent stipulated in the lease, while the purchaser of a mere right of occupancy does not take on himself or assume the obligation to pay rent. See Villavaso, et al v. Their Creditors, 48 La.Ann. 946, 20 So.2d 167. This distinction is also noticed in Walker v. Dohan, 39 La.Ann. 743, 2 So. 381; Bartels and Dana v. Their Creditors, et al, 11 La. Ann. 433; Succession of Howard, 2 Orleans App. 163; Marfese v. Nelson, et al, 10 Orleans App. 288.’
“In Hollier v. Boustany, La.App., 3rd Cir., 180 So.2d 591, the Court of Appeal for the Third Circuit with Judge Tate as the organ of the Court said the following:
*304 “ ‘The decisions relied upon by the plaintiff do not hold that the right of occupancy is a separate and distinct entity existing completely independent of the lease. They merely hold that the right of occupancy, although a right and obligation forming part of the lease, may under certain circumstances be sold independently of other rights and obligations of the lease.’
“It seems clear that the use of the word ‘acquire’ in Section 991 of Title 39 of Louisiana Revised Statutes cannot reasonably be interpreted to restrict political subdivisions to the acquisition of industrial plant sites in full fee ownership, but that on the contrary such sites may be acquired by purchase of a right of occupancy as in the present case.
“As is usual in similar matters, the Lease Agreement between the Parish and Hercules contains many provisions to carry out the purposes of the statute which authorizes the Parish to act in these matters. Throughout the documents, including the proposition submitted to and approved by the voting taxpayers, it has been clearly shown, with particularity, that this plant site would be acquired by transfer of the right of occupancy by Hercules, holding a lease on the land comprising the plant site with an option to purchase the land itself.
“Consideration will now be given to the second principal basis, urged by the plaintiff, for the injunction herein sought. The plaintiff contends that the proposed purchase by the Parish of the right of occupancy and the proposed lease of the right of occupancy to Hercules will have the effect of ‘uniting or combining the qualities of both debtor and creditor of the right of occupancy in Hercules so as to extinguish the said right of occupancy’ of the plant site. It is urged by the plaintiff that the right of occupancy would thus be extinguished by confusion under Civil Code Article 2217, which reads as follows:
“ ‘When the qualities of debtor and creditor are united in the same person, there arises a confusion of right, which extinguishes the obligation.’
“In 36 Tulane Law Review at page S21 there is an article entitled ‘Extinguishment of Obligations by Confusion.’ In that article the doctrine of confusion is explained, in part, as follows:
“ ‘In the Civil law, an obligation is said to be extinguished by confusion when a person is placed in the position of owing the obligation to himself. Confusion in this context is not to be mistaken for the confusion which results when the goods of one person become mingled with those of another so as to lose their separate identity. Rather the fundamental concept is that an obligation ceases to exist when the qualities of debtor and creditor of the same obligation are joined in the same person.
“ ‘The basic principles in the law of confusion have existed from Roman times down to the present without substantial change. In Louisiana most of the articles in the Civil Code on confusion were taken from the French Civil Code of 1804 or from the French pre-codal commentators. Therefore, the French and Louisiana law on confusion will be discussed together and will only be distinguished where the two are significantly different.’ .
“Further, in the same article the following appears:
“ ‘Since payment or performance by an obligor solely for his own benefit would be a useless ceremony, the Civil Code provides that an obligation is extinguished as a matter of law upon joining of both the active and passive sides of the obligation in the same person. The Codal requirement that the same person must be both creditor and debtor for the confusion to occur has been interpreted by the courts to allow extinguishment of a principal’s obligation when his agent acquires the principal’s outstand *305 ing debts while in the scope of his employment.’
“ ‘It seems clear that the manner in which the same person becomes the creditor and debtor of an obligation is immaterial. The Civil Code provides for inheritance and abandonment, while the jurisprudence has added cases in which the owner of the active side of a debt acquired the passive side by sale. The generality of the language of the Code indicates that donation, prescription, or any other method of acquisition of Uie two sides of an obligation by the same person will extinguish the obligation by confusion. Furthermore, the obligation is extinguished irrespective of whether it is the creditor who subsequently acquires the debt or the debtor who subsequently acquires the credit.’
“ ‘For confusion to occur the same person must acquire the full and perfect ownership of both sides of the obligation by a conveyance which is translative of title.’
“From the English translation by the Louisiana State Law Institute of Planiol Traite Elementaire de Droit Civil, Chapter 5, Vol. 2 of Part 1, the following is quoted:
“ ‘598. Definition
“ ‘Confusion is the reunion in the same person of the two qualities of creditor and debtor (Art. 1300). Those two qualities are incompatible, for one cannot be a creditor of himself; the debt is reputed extinguished.
“ ‘Art. 1300 is in error in stating that confusion extinguishes “the two credits.” That is true in compensation; but in the case of confusion there is only one credit to extinguish.
“ ‘599. Causes of Confusion
“ ‘Generally, confusion is produced by the effect of successions; the creditor succeeds to the debtor or vice versa, either by virtue of the law, or by virtue of a testament. But the same result can be produced by an inter vivos acquisition of the credit.
“ ‘600. Obstacle Resulting From, Benefit of Inventory
“ ‘When the heir accepts the succession under benefit of inventory, it is considered, by a fiction, that there are two distinct patrimonies, each one with its charges and its rights. The acceptance, therefore, under benefit of inventory prevents confusion from taking place.
“ ‘601. Effect of Confusion
“ ‘Confusion extinguishes the credit because execution from then on is impossible. The Romans said that its effect was rather to liberate the debtor than to extinguish the obligation (Dig.Bk. LXVI, t. 1, fr. 71). The nuance is very subtle if it is real.’
“The answer to the contention made by plaintiff is that the Parish will purchase from Hercules the right of occupancy, which under the decisions hereinabove cited, may be sold independently of other rights and obligations of the lease, and the Parish will lease back this right to Hercules in a lease which also includes buildings and equipment. The lease of the right of occupancy to Hercules will be subject to all of the terms, conditions and obligations imposed thereon by the Lease Agreement between the Parish and Hercules, including the obligation to pay rent which will meet and pay the principal and interest on the revenue bonds to be issued. Hercules will not, therefore, reacquire the full and perfect ownership of the right of occupancy, but will lease the same from the Parish subj ect to the terms, obligations, and conditions which did not affect or burden the same when sold to the Parish. Hercules, therefore, will remain a debtor to the Parish, and the qualities of debtor and creditor will not be united in the same person with respect to the right of occupancy of the plant site.
*306 “For the reasons assigned, the Court concludes that the plaintiff has failed to establish the invalidity, in any respect, of the Lease Agreement dated May IS, 1967, between the Parish of Hercules, and the Court further concludes that the plan of the project, as contained in the said Lease Agreement meets the requirements of R.S. 39:991 to 39:1001, inclusive. Accordingly, the judgment is rendered in favor of the defendant, rejecting plaintiff’s demands and dismissing plaintiff’s suit at his cost.”
For the written reasons assigned, the judgment of the district court is affirmed at appellant’s costs.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.